[Filed December 21, 1888.]

## MARY E. SHERIDAN *v.* CITY OF SALEM.

MUNICIPAL CORPORATIONS—AUDIT OF CLAIM—TORTS.—The provisions of the charter of the City of Salem that the common council has exclusive power to appropriate for any item of city expenditure, and provide for the payment of the debts and expenses of the city, and that no claim shall be paid until it is presented and allowed by the common council, do not apply to a claim of damages for injuries received in consequence of a defective cross-walk, or other tort.

SAME—DEFECTIVE WAY—CORPORATE LIABILITY—DAMAGES.—Under the provisions of the statute (Civil Code, Sec. 347, p. 182), a municipal or other public corporation is liable for damages occasioned to passengers in consequence of the neglect of its officers to keep its streets and highways in repair, unless exempted from such liability by express provision of the charter.

STARE DECISIS.—The rule criticised but adhered to, upon the principle *stare decisis.*

EVIDENCE—QUESTION FOR JURY.—In an action against a municipal corporation for injuries received from a defective cross-walk, upon an issue as to whether or not the streets on which such walk was located were common thoroughfares, maintained by the city, evidence that a former and the present supervisor of roads within the city, officers under the control of the common council, had repaired said walk several times, both before and after the alleged injury, though it did not show that the council had specially directed it, is sufficient to authorize the court to submit the question to the jury.

AMENDMENT.—An act of the legislative assembly, purporting to be an amendment of the charter of a municipal corporation, and conferring upon it important additional powers, but not changing existing authority nor presenting any different mode of exercising it, is not such an amendment as is prohibited by Art 4, Sec. 22 of the state constitution, that "no act shall ever be revised or amended by mere reference to its title; but the act revised or section amended shall be set forth and published at full length."

MARION COUNTY.   Defendant appeals.   Affirmed.

*George H. Burnett,* for Appellant.

The charter of the City of Salem provides that the common council has *exclusive* power " to appropriate for any item of city expenditure, and to provide for the payment of the debts and expenses of the city." (Laws, 1874, p. 173.) And that no claim against the city shall be paid until it is audited and allowed by the common council. (City Laws, Sec. 12, p. 9.) In view of these provisions of the charter, the complaint is clearly defective, within the meaning and reason of *Stackpole* v. *School District,* 9 Or. 508, which holds that the omission of an allegation that the claim was presented to the board of directors before action brought, renders it bad on demurrer. (And see also, *Forbes* v. *District,* 10 Wis. 117 ; *Alexander* v. *County Commissioners,* 67 N. C. 330 ; *Martin* v. *Supervisors,* 29 N. Y. 645 ; *Cerro Gordo* v. *Wright,* 50 Iowa, 459.) The word " claim " is large enough in its meaning to include torts. (*Vedder* v. *Vedder,* 1 Denio, 257.) We contend, further, that

the city is not liable in this class of cases, but that the liability, if there be any, rests upon the officers composing the common council. ( *Winbight* v. *Los Angeles,* 45 Cal. 36.) The city is not liable for the negligence of its officers. (*Murtaugh* v. *St. Louis,* 44 Mo. 479 ; *Hafford* v. *New Bedford,* 16 Gray, 302 ; *Pray* v. *Jersey City,* 32 N. J. 394 ; *Barney* v. *City of Lowell,* 98 Mass. 570.) But, although the maxim *respondent superior* applies here, which we do not concede, still the matter of keeping streets in repair is left to the discretion of the council. " The council shall have power and is authorized, *whenever it deems it expedient,* * * * * to improve any streets,"  etc. (Laws, 1368, p. 81.) The exercise of the power is legislative (Laws, 1868, p. 46, Sec. 42), and damages cannot be predicated of an act or omission depending upon legislative power. (*Rankin* v. *Buckman,* 9 Or. 260 ; *Patterson* v. *Barnett,* 46 N. J. L. 62; Dillon, Mun. Corp. (3d ed.) Secs. 949, 951.) To recover for the act or omission of the supervisor of roads it must appear : (1) That he was acting under the direction of the council; (2) that he was applying the road tax ; and (3) that he was applying it to the road, and not to any street or thoroughfare. If any of these things are wanting, he is acting beyond the scope of his authority, and neither the city nor the council is bound. ( *Tower* v. *Rutland,* 56 Vt. 32 ; *Folsom* v. *Underhill,* 36 Id. 580 ; *Hyde* v. *Jamaica,* 27 Vt. 580.) The city was originally incorporated in 1862. In 1868, the original act was amended, but as amended, the charter contains no provisions for boundaries, taxation or any other requisite for ordinary municipal government. (Laws, 1868, p. 81.) As provided in Sec. 20, article 4, of the state constitution, the subject of the act is expressed in the title, as " an Act to amend an act entitled ' an Act to incorporate the City of Salem,' approved October —, 1862," and as provided by Sec. 22 of the same article, the act is set forth at full length as revised. The effect of this is, as we contend, to effectually blot out and supersede the original charter of 1862.

*N. B. Knight,* for Respondent.

The provision in the charter, that no claim against the city shall be paid until it is audited and allowed by the common council, applies only to contracts, and not to torts. The word "claim," in section 12 of the charter, does not include causes of action for damages founded in tort. (*Kelly* v. *The City of Madison*, 43 Wis. 638.) The rule laid down in *Stackpole* v. *School District*, 9 Or. 508, does not, therefore, apply to cases of this character. The duty of the common council to keep the streets in reasonably safe condition for travel is municipal or ministerial, and not governmental. (*City of Denver* v. *Dinsmore*, 7 Colo. 328.) Section 847 of the civil code confers upon the respondent the right to maintain this action against the city, and I know of no subsequent statute or law exempting the city from such an action. (*O'Harra* v. *Portland*, 3 Or. 526 ; *Rankin* v. *Buckman*, 9 Or. 253.) "By the charter it is the duty of the city to keep in repair and safe for travel the cross-walks of the city, which have been constructed by the city and maintained under its authority." There is nothing erroneous in that instruction. (Dillon, Mun Corp., Sec. 789 ; *Rankin* v. *Buckman*, 9 Or. 253 ; *City of Aurora* v. *Bitner*, 100 Ind. 396 ; *City of Denver* v. *Dinsmore*, 6 Colo. 328.)

THAYER, J.—This appeal is from a judgment in an action in favor of the respondent against the appellant, for a personal injury alleged to have been sustained in consequence of a defective walk across one of the appellant's streets. The respondent alleged in her complaint that the appellant was a municipal corporation, having exclusive power and authority to provide for the construction, cleaning, and repair of side and cross-walks in said city ; that it undertook to and did construct and maintain a cross-walk on the south side of Marion street, and across Winter street therein, which streets were at the time and still are thoroughfares used by the citizens of the city and others ; but that it neglected to keep and maintain said cross-walk in good repair, and suffered it to become rotten and dangerous to persons passing along it, by reason of which the respondent, while traveling over it on the 8th day of May, 1885, received a fall, caused by the giving way of a portion of the cross-walk,

which occasioned the injury complained of.   The appellant interposed a general demurrer to the complaint, which having been overruled by the court, it answered over, denying the allegations of the complaint.   The case was tried by a jury, who returned a verdict against the appellant for $900, upon which the judgment appealed from was entered.

A number of grounds of error are assigned in the notice of appeal, the first of which is that the complaint is defective in not alleging that the respondent's claim was presented to the common council of the city before the action was brought. This the appellant's counsel maintains should have been done, in compliance with the city charter of said city, and he refers us to two of its provisions.   The first one provides that the common council has exclusive power to appropriate for any item of city expenditure, and to provide for the payment of the debts and expenses of the city.   The second provides that no claim against the city shall be paid, until it is audited and allowed by the common council, and then the treasurer shall pay it upon a warrant drawn upon him by the recorder.   We do not think that these provisions were intended to apply to a claim of this character.   They were intended as a restriction upon the treasurer in paying out the money of the city, and are doubtless within the rule laid down in *Stackpole* v. *School District*, 9 Or. 508.   All claims arising out of the ordinary expenditures of the city are required to be presented to the common council for allowance, before an action can be maintained thereon.   But that arises out of a relation the claimant sustains to the city, created by an employment or contract of some character.   Thus, a person who performs service or does something for the city at its request, for which compensation is to be made, tacitly agrees that he will present his claim to the common council for audit and allowance.   That is the only mode by which the city can pay him.   He so understands it when he engages to perform the service, and he could not claim that there had been a refusal to pay, or that there had been any breach of the contract or obligation, until the common council had refused to audit his demand.   But in cases of tort,

the action is for damages, and the party injured is under no more obligation to present the claim to the corporation than he would be to a private person who had done him a wrong. The reason of the rule only applies to the former class of claims, and not to the latter; has no application whatever to them. Appellant's counsel lays great stress upon the comprehensiveness of the meaning of the word claim, but that has nothing to do with the construction of the provisions of the charter referred to. It is not in consequence of that, that the claim is required to be presented to be audited. It is the reason before indicated. The breach of payment in the action of assumpsit is a necessary allegation, but it does not figure at all in an action of trespass on the case. The city only agrees to pay a contracted indebtedness in case the claim is presented as mentioned, and the action is for a refusal to audit and allow it; but if it commit a tort, the action matures at once. If the charter read that no claim should be sued upon until so presented, the rule might be different, and the meaning of the term "claim" be important; but, under the circumstances of the case, it is of no consequence whatever.

The next assignment of error is the question of the liability of a municipal corporation for damages, occasioned to passengers along its streets and side-walks, in consequence of the neglect of its officers to keep them in repair. It is the same old, ugly question that has wearied the patience of courts and attorneys for many years. A great many recoveries of damages have been upheld by the courts in that class of cases; but they have required the expenditure of an immense amount of brain labor to discover any principle upon which to sustain them. The appellant's counsel contends that the power delegated by the legislature, contained in the city charter of the appellant, in reference to the case of streets, side-walks and cross-walks, is conferred exclusively upon the mayor and aldermen, comprising the common council, and that they alone should be held liable for the consequences resulting from their own carelessness. That view seems reasonable, and if it had been adopted in the outset, would have prevented the perplexity which the devious

course pursued by the courts of many of the states has oc-
casioned. I always thought it the correct one. I have nev-
er been able to discover any justice in allowing officials,
charged with a specific duty relating to an affair in which
the entire community is interested, to shirk the consequences
of their own inattention—if not absolute heedlessness—upon
the tax-payers of a particular district. It is universally
conceded that municipal corporations are organized in the
main for governmental purposes; and that the opening, im-
provement and repair of public streets in a town are purely
matters of a public interest; and that the use and enjoyment of
them belong to the public generally. Besides, the right to
maintain an action for damages in such cases is the subject
of great abuse. A person receiving an injury owing to the de-
fectiveness of a street or side-walk is very liable to intensify it,
and juries are not unfrequently imposed upon shamefully in
the matter. And again, juries are not inclined to make that dis-
crimination, when a public corporation is defendant, and an in-
jured party, surrounded by circumstances usually calculated
to excite sympathy, as plaintiff, which they would if the respon-
sibility were upon an individual. The policy always seemed
to me to be a pernicious one, and entirely destitute of principle
to stand upon. The Massachusetts decisions, and those of other
states in the same line, indicate the only correct view upon the
subject, in my opinion. They recognize no common law liabil-
ity in such cases, nor any liability at all, unless given expressly
by statute. That seems to be the only rational solution of the
question. It has been determined by this court, that the statute
of the state imposing liability upon public corporations extends
to such cases as the one under consideration. (*McCalla* v.
*County of Multnomah*, 3 Or. 424.) That statute provides that
" an action may be maintained against a county, incorporated
town, school district, or other public corporation of like charac-
ter in this state, either upon a contract made by such county
or other public corporation in its public character, and within
the scope of its authority, or for an injury to the rights of the
plaintiff, arising from some act or omission of such county or

other public corporation." (Civil Code, Sec. 347, 182.) If this were an original question, I should very likely be of the opinion that " the act or omission " from which the injury arose, referred to in the statute, related to some act or omission of a strictly corporate character, and did not include the acts or omissions of the officers of the county or public corporation, in the discharge of duties they owed to the public, such as keeping public roads and streets in good repair; but the principle of that case has been followed in this state for more than seventeen years, and I do not see any consistent way of getting rid of it without the aid of legislation. Many of the larger towns of the state have avoided its effects, by provisions in their charters exempting the town from liability in such case, and imposing it upon the officers thereof, where they have been guilty of negligence that occasioned the injury; but without some such course, or a modification of the statute before referred to, the tax-payers of public corporations will have to continue to be insurers against the negligence of their officers. The appellant's counsel seemed to think that the charter in this case was different, in regard to vesting the power in the common council instead of the corporation itself, from the cases where such corporations had been held liable for damages, under similar circumstances. I have examined the charters of many of the corporations in the state, and find that they are substantially like the Salem charter in that particular. Besides, the case of McCalla v. County of Multnomah, supra, covers every conceivable question of that character. There the duty of keeping roads in repair was especially enjoined upon the road supervisor, and the county had nothing to do with the matter; but the court held that the county court having the power to appoint and remove the supervisor, rendered the county liable. I do not think the case stands upon any correct principle; but, as before observed, it has been followed by numerous adjudications in the state respecting the liability of municipal corporations, and, in our judgment, if the rule is to be changed, the legislature had better make the change. Our decision upon the subject is controlled entirely by the rule of stare decisis.

Another assignment of error is, that it does not appear that the cross-walk in question was maintained by the authority of the city council. The proof upon that point showed that a former and present supervisor of roads, an officer appointed by the common council under the charter of the city, who is required to collect and apply, under the direction of the council, the road tax within the city, had repaired said cross-walk, and caused it to be repaired several times, both before and after the injury; though it did not appear that the city council had especially directed it. The question arises upon the charge of the court to the jury, that by the charter it was the duty of the city to keep in repair and safe for travel the cross-walks in the city, and that were maintained under its authority. The appellant's counsel saved an exception to this part of the charge, claiming that the evidence was insufficient to authorize the court to refer the matter to the jury. The bill of exceptions contains a statement that there was no other testimony than above indicated showing the fact. This must be taken, however, with the further fact that the two streets, Marion and Winter streets, were common thoroughfares within the city, used by the citizens thereof and others. This has to be presumed after verdict, as it was alleged in the complaint. Then if those facts tended to prove that the city council had directed the improvement of the cross-walk, which I think we must conclude, there was evidence tending to show that it was maintained by the city, within the current of authorities bearing upon that point, and the court properly submitted the question to the jury.

The appellant's counsel has also submitted a question, as to whether the city had any charter aside from the amendment of 1868. It appears that the legislative assembly of the state at its session during that year, adopted an amendment to the existing charter of the city, conferring upon it important additional powers relating to the improvement of its public grounds, the establishment and opening of streets within its limits, and other matters, and prescribed the mode by which those powers were to be carried out. This amendment, said counsel suggests,

constitutes the entire charter of the city. He deduces this conclusion from the fact that the constitution provides that when an act is revised or a section amended, the act revised or section amended shall be set forth at full length ; and, assuming that the legislature did its duty, as he would claim, in publishing the act as revised, the amendment must embrace all there is of the charter. The difficulty, however, in the counsel's position is, that the act of 1868 was not a revision of the former act, or an amendment of any section thereof. It was only a supplement thereto. It amended the charter of the city by conferring on the common council powers that it did not theretofore possess, but did not, as I can see, change existing authority, or prescribe any different mode of procedure for exercising it. An amendment such as the constitution refers to in section 22 of article 4, is a change in some of the existing provisions of an act. Additional provisions not affecting existing ones, are not the character of amendments intended by said section 22 of the constitution. To enlarge the jurisdiction of the city government, so as to extend it to other and distinct subjects, is no such amendment of the constitution as section 22 provides in regard to. We substantially held that in the Portland Water case, *David et al.* v. *Portland et al.*, decided at this term. The effect of the counsel's logic, as he admits, blots out the original charter of 1862, and leaves the city without any provision for boundaries, taxation, or any other requisite for ordinary municipal goverment. If that were the result, I think it would overtax his ingenuity to explain how it succeeded in retaining an attorney to present its defense herein, or how it could be brought into court, even. The argument, it seems to me, if conceded. would have an unfortunate rebound.

The judgment appealed from will be affirmed.