(October 15, 1909.)

OLIVE D. MILLER and GEORGE T. MILLER, Respondents, v. THE VILLAGE OF MULLAN, Appellant.

[104 Pac. 660.]

ACTION FOR DAMAGES—DEFECTIVE STREET CROSSING—NEGLIGENCE OF VILLAGE AUTHORITIES—IMPLIED NOTICE OF DEFECTS—ITEMIZED STATEMENT OF CLAIM—FILING CLAIM WITH VILLAGE COUNCIL—EVIDENCE.

1. In order to hold a village liable for an injury sustained through defects in a street crossing, of which defect it had no actual notice, it should be shown that the defect was so obvious and existed for such a length of time as to indicate that the authorities knew, or ought to have known, of the danger, and had known it long enough to have repaired it.

2. While it is a matter of common knowledge that board side-walks and crossings ordinarily used in villages and cities of this state will rot and decay in course of time, still the length of time in which they will become dangerous and unsafe is so indefinite and uncertain, and subject to so many influences either advancing or re-tarding the process of decay, that no fixed and definite length of time can be established as a specific time at and after which the walk will become unsafe. The question of the unsafe condition of the walk caused by reason of age and decay is purely a question of fact, to be submitted to the jury in each specific case depending upon the special circumstances of the particular case.

3. The municipalities of this state cannot be held chargeable with notice of the time when and conditions under which a wooden side-walk or cross-walk will cease to be safe for pedestrians merely on account of age and consequent decay where no patent and obvious defect is apparent.

4. In order to impose liability on the municipality for injuries sustained on a cross-walk by reason of the rotten and decayed con-dition of the lumber and boards out of which the walk was con-structed, and where there is no particular or specific patent defect, it must appear that the condition of the walk was such that danger might reasonably be apprehended at any time, and that a reason-ably prudent person would have repaired it and guarded against the danger.

5. The question of the frequency of the inspections and examina-tions of sidewalks and street crossings that should necessarily be made by municipal authorities is a question of fact to be deter-mined by the jury under the particular conditions and circumstances of each case.

6. While it is the duty of villages and cities to maintain their sidewalks and cross-walks in a reasonably safe condition, the care and precaution which would constitute reasonable diligence with reference to the repair and safety of a walk in a remote part of the town or village, where the walk is but little used, would not ordinarily amount to reasonable care and diligence with reference to a walk or crossing in the heart of the town where the entire popu-lation passes over it daily.

7. Where the village asked the court to give the jury an instruc-tion on the question of its negligence in reference to sidewalks and streets, which instruction contained the following sentence: "A vil-lage is not guilty of negligence for a failure to build sidewalks on all its streets, but where it has constructed a walk it must be kept in a reasonably safe condition," it was error for the court to strike out the word "reasonably" and then give the requested instruction

as thus modified. Municipalities are not insurers of the condition of their streets and walks, and the most that can be required is to maintain them in a "reasonably safe" condition.

8. The provisions of sec. 4209, Rev. Codes, requiring the adverse party to serve an itemized statement of the account sued on within ten days after demand therefor are not mandatory but are directory, and vest a discretion in the trial court as to whether or not it should inflict the extreme penalty excluding evidence of such an account, where the party has failed to serve the statement within the time required.

9. The provisions of sec. 2263 of the Rev. Codes, requiring that an itemized statement of a claim against a city or village duly verified by the oath of the claimant must be presented to the city or village authorities before suit is commenced thereon, do not apply to an action in tort for a personal injury sustained on account of defective streets or sidewalks.

10. The evidence of "rumors" as to the condition of a sidewalk or street crossing is not admissible in an action against a city or village for damages sustained on account of a defective walk.

11. In a case where there is no dispute as to the particular place at which an injury occurred on a sidewalk or cross-walk, evidence of the defective or unsafe condition of the sidewalk at other places within that vicinity is incompetent and inadmissible, except it be in a case where it is claimed that the defect was not a special one, but was due rather to the general decayed and bad condition of the whole walk, of which the particular place where the injury was suffered was a part.

(Syllabus by the court.)

APPEAL from the District Court of the First Judicial District, for the County of Shoshone. Hon. W. W. Woods, Judge.

Action by plaintiff to recover damages for personal injury sustained while traveling over a cross-walk in the defendant village. Judgment for plaintiff. Defendant appealed. *Reversed.*

A. G. Kerns, and A. T. Ryan, for Appellant.

Notice to the corporation of the defect which caused the injury, or facts from which notice thereof may reasonably be inferred, or proof of circumstances from which it appears

that the defect ought to have been known and remedied by it, is essential to liability.  (2 Dillon on Mun. Corp., 3d ed., sec. 1024.)  The corporation, in the absence of a controlling enactment, is responsible only for a reasonable diligence to repair the defect or prevent accidents after the unsafe condition of the street is known, or ought to have been known to it, or to its officers having authority to act respecting it.  (2 Dillon on Mun. Corp., 3d ed., sec. 1025.)

Where a defect in a cross-walk or sidewalk is a latent one, the municipality is not liable, unless there is evidence charging it with notice.  (Elliott on Ev., sec. 2513; *Hanscom v. Boston*, 141 Mass. 242, 5 N. E. 249; *Stanton v. Salem*, 145 Mass. 476, 14 N. E. 519; *Cook v. City of Anamosa*, 66 Iowa, 427, 23 N. W. 907; *Jones v. City of Greensboro*, 124 N. C. 310, 32 S. E. 675; *Joliet v. Walker*, 7 Ill. App. 267; *Bigelow v. City of Kalamazoo*, 97 Mich. 121, 56 N. W. 339; *Weisse v. City of Detroit*, 105 Mich. 482, 63 N. W. 423; *Bucher et al. v. City of South Bend*, 20 Ind. App. 177, 50 N. E. 412; *Hembling v. City of Grand Rapids*, 99 Mich. 292, 58 N. W. 310; *Lohr v. Borough of Philipsburg*, 165 Pa. 109, 30 Atl. 822; *City of Jackson v. Pool*, 91 Tenn. 448, 19 S. W. 324; *Cunningham v. Denver*, 23 Colo. 18, 58 Am. St. 212, 45 Pac. 356; *Cramer v. City of Burlington*, 39 Iowa, 512; *Carvin v. City of St. Louis*, 151 Mo. 334, 52 S. W. 210; *Burns v. City of Bradford*, 137 Pa. 361, 20 Atl. 997, 11 L. R. A. 726.)

AILSHIE, J.—Respondents recovered judgment in the trial court for $1,500 damages on account of personal injuries received by Olive D. Miller, wife of respondent George T. Miller, by falling on a defective street crossing.  Mrs. Miller, in company with her two grown daughters and her infant daughter, was traveling on the Second street crossing over Pine street in the Village of Mullan, and stepped on a board which broke, and fell and broke her leg immediately above the ankle and sustained other bruises and injuries.

On the corner at one end of this crossing stood a candy store, and at the other end of the crossing and on the opposite side of Pine street stood the electric light plant.  Mrs.

Miller and her daughters had come down Pine street and the girls had preceded her several feet and were on the cross-walk, having passed over the place where respondent was injured only a few seconds later. The cross-walk seems to have consisted of three two by twelve inch boards, side by side, extending lengthwise across the street. Respondent testifies that she went upon the crossing from the side of the street on which the candy store was located, and that at a distance of about three feet from the sidewalk one of the boards broke and she fell and sustained the injuries of which she complains. She also says that she did not notice any defect in the walk before receiving the injury, and that she had passed over it several times before during the last preceding thirteen days. The girls testified that they did not notice any danger or defect in the walk as they passed over it and that they had also passed over it several times before that, but had not noticed anything wrong with the walk at that place.

This particular cross-walk seems to have been quite old, and had some holes broken in it toward the end next to the electric light building, but no one claims that any holes or breaks were visible at the end or near where this board broke and Mrs. Miller received her injuries. After the accident it was discovered that the board was well rotted on the under side and that the sill or cross-piece on which the boards rested at this point was also rotten, and had not been sufficient to support the board with the added weight of Mrs. Miller. No contention is made that there was any patent or visible defect in the crossing at the point where the injury occurred. The cause of action appears to have been prosecuted on the theory that the crossing contained a latent defect, namely, rotten and decayed boards and sills, which an ordinary pedestrian could not, and would not be expected to, discover, but which it was the duty of the village authorities to discover and repair. It is not contended that the authorities had any actual notice of the defect at this place, but it is contended, and there is some evidence to support the contention, that this was an old crossing, and that it was somewhat decayed and out of repair toward the other end from where the acci-

dent occurred.   Respondents insist that although this was a latent defect, the village authorities are chargeable with constructive notice of the same, and that their failure to have it repaired before this accident is negligence for which the municipality is liable.

It is settled in this state that cities and villages incorporated under the general law of the state "are liable in damages for a negligent discharge of the duty of keeping streets and alleys in a reasonably safe condition for use by travelers in the usual modes." (*Carson v. City of Genesee,* 9 Ida. 244, 108 Am. St. 127, 74 Pac. 862; *Moreton v. Village of St. Anthony,* 9 Ida. 532, 75 Pac. 262.)

Without negligence there can be no recovery.   Negligence may arise out of a failure to act on actual and positive knowledge of a defect or danger in a street or sidewalk, or it may equally arise out of constructive knowledge on the part of the proper village or city authorities that a defect or danger exists.   (2 Dillon Mun. Corp., sec. 1024; Elliott on Ev., sec. 2513.)

Since it is not contended that the village had actual notice of the decayed and defective condition of the walk at the place where this injury was sustained, the recovery must be had, if at all, on the grounds of constructive notice.   The walk was built prior to the incorporation of the village, but no contention is made that the walk was not properly constructed in the first place.   In order to hold the village liable, it should be shown that the defect was so obvious or had existed for such a length of time as to indicate that the authorities knew of the danger, and had known it a sufficient length of time to have repaired it.   (2 Dillon Mun. Corp., sec. 1025; *Hanscom v. Boston,* 141 Mass. 242, 5 N. E. 249; *Jones v. City of Greensborough,* 124 N. C. 310, 32 S. E. 675; *Cook v. City of Anamosa,* 66 Iowa, 427, 23 N. W. 907.)   It is common knowledge that the board sidewalks used in the villages and most of the cities of this state will rot and decay in course of time, but the length of time in which they will become dangerous and unsafe is so indefinite and uncertain and subject to so many influences, either advancing or re-

tarding the process of decay, that no reasonable estimate can be made .as to the specific time at and after which a walk will become unsafe. Climatic conditions vary greatly in different localities and walks are also constructed in different ways. (*Miller v. City of North Adams,* 182 Mass. 569, 66 N. E. 197; *Baustian v. Young,* 152 Mo. 317, 75 Am. St. 466, 53 S. W. 921; *Rochefort v. Inhabitants of Attleboro,* 154 Mass. 140, 26 Am. St. 221, 27 N. E. 1013; *City of Denver v. Dean,* 10 Colo. 375, 3 Am. St. 595, 16 Pac. 30; *Buckner v. City of South Bend,* 20 Ind. App. 177, 50 N. E. 412.) One walk might be fairly good after ten years' use, while another might become wholly unsafe in less time.

This kind of a case is clearly distinguishable from cases involving the duty to inspect and keep in safe condition coalholes and trap-doors in sidewalks and bridges and culverts within the city limits. In these latter cases the nature of the place demands a higher degree of care and vigilance, and more frequent inspection than is required for the ordinary sidewalk or street crossing.

In the case at bar, many witnesses testified to passing over this crossing daily and that they had never noticed any defect at or near the place of the accident. Some said the walk as a whole was in fairly good condition, while others said it had holes in it and was in a decayed condition on the side of Pine street next to the electric light plant, and the cause for this was given as being on account of wagons crossing, principally on that side. It seems that teams could not cross on the side next to the candy store. The street commissioner testified that he inspected this crossing about one month prior to the accident and that it was in "very fair condition," and that he discovered no danger or defects.

A careful examination of the record fails to disclose any sufficient evidence on which to rest a verdict of negligence on the part of the village in not discovering and repairing this latent defect in the crossing. It may be that the village was in fact negligent in not discovering it and that the respondents can satisfactorily establish such negligence on a new trial, but we would not be justified by the record before

us in affirming the judgment. It would not do to direct a judgment in this case on account of the erroneous theory on which the case was apparently tried in the court below.

If this court should hold that the municipalities of this state are chargeable with notice of the time when and conditions under which a wooden sidewalk or cross-walk ceases to be safe for pedestrians on account of age and use where no patent or obvious defect is apparent, it would subject them to a hazard, care and expense that but few of them could afford. (*Weisse v. Detroit,* 105 Mich. 482, 63 N. W. 423; *Buckner v. South Bend,* 20 Ind. App. 177, 50 N. E. 412.) If, on the contrary, a walk has been used for so long that it is in a general state and condition of decay and disrepair, and is allowed to remain in such condition, notice of such condition will be imputed to the municipality, and if so bad as to be dangerous, such failure to repair or improve it will become negligence. In order to impose liability in such cases as this, the condition of the walk must be such that danger may reasonably be apprehended at any time, and therefore reasonable diligence and prudence would require that it be guarded against. (*Stoddard v. Inhabitants of Winchester,* 154 Mass. 149, 26 Am. St. 223, 27 N. E. 1014; *Rochefort v. Inhabitants of Attleborough,* 154 Mass. 140, 26 Am. St. 221, 27 N. E. 1013; *Rapho v. Moore,* 68 Pa. 408, 8 Am. Rep. 202.)

The necessity for a reversal of this judgment is made more imperative by reason of the instructions given by the court. In instruction No. 12, given by the court on request of the plaintiff, the jury were told that "If the officers of the defendant did not possess the requisite skill to discharge the duty of inspection, then it was the duty of the officers of said defendant to appoint or provide some one possessing such skill, and to have all sidewalks in the defendant village examined frequently as men of ordinary prudence and care would deem necessary for the safety of the traveling public, and as experience demonstrated the necessity of examination." Here it will be observed that the court required an unusually high degree of skill in the officers of the village, and yet did

not designate the particular officer or officers that should possess such special skill and knowledge.

It should be remembered that all the officers having anything to do with streets and sidewalks are elective officers with the exception of the street commissioner, and the law prescribes the qualifications of elective officers. No power exists to dismiss or discharge any elective officer. Of course, the street commissioner himself is appointed by the trustees to discharge certain duties; he is under the direction and control of the board of trustees. This part of the instruction was to a degree misleading and deceptive, as was that part of the instruction requiring frequent examinations. The frequency of examinations and inspections depends upon the conditions, location and circumstances surrounding each cause of injury. While prudence would suggest the frequent examination of streets and sidewalks, still a street known to be in general good condition would not require the frequency of inspection and examination that would be necessary for one not in such a state of repair, or one on which the walks are very old and in a state of decay. The question of frequency of examinations necessary to relieve a city of a charge of negligence is one of fact to be determined by the jury in each particular case.

Again, in instruction No. 13, the court instructed the jury "That it is as much the duty of the defendant to keep the sidewalks in the suburbs of the defendant in a safe condition for the use of travelers, as those in the heart of the city; that while the authorities may have a discretion in the matter of pavements or no pavements, yet they have no discretion in the matter of safety; and it is an absolute duty to keep all the sidewalks in the city in a reasonably safe condition for the use of travelers, whether in the heart of the city or near the limits." This instruction was evidently called forth by the fact that the crossing at which the accident occurred was in the outskirts of the village and, as the witnesses testified, was the last crossing on Pine street. Now, while it is true that the duty to keep sidewalks and crossings in a reasonably safe condition is imperative upon the

municipal authorities with reference to walks in the outskirts of a town as well as in the busiest portion, still the place where the injury occurs often has an important bearing on the question of implied notice and consequent negligence. What would constitute reasonable care and precaution with reference to the repair and safety of a walk in a remote part of a town where it is but little used would not in every case amount to reasonable care and prudence with reference to a walk or crossing in the heart of the town where the entire population pass over it daily. Elliott on Roads and Streets, sec. 858, says:

"The place where the injury occurred is sometimes an important matter for consideration, especially is it so upon the question of notice, for what would be negligence respecting a street in a densely populated and much frequented part of a city or incorporated town might not be so in a remote or little used street or alley. In most cases the question of whether the corporations ought to have acquired knowledge is dependent upon the locality and its surroundings, and is generally a question of fact for the jury."

This position is sustained and approved by the supreme court of appeals of West Virginia in *Arthur v. City of Charleston,* 46 W. Va. 88, 32 S. E. 1024. See, also, *Reed v. Mayor,* 31 Hun, 311; 3 Elliott on Evidence, sec. 2514.

In view of the severity of the foregoing instructions given on the request of the plaintiff, the error of the court in modifying the defendant's requested instruction No. 2 was the more prejudicial in that it tended to center the minds of the jurors on the necessity for the corporation maintaining its walks in a state of absolute safety rather than in a state of reasonable safety, as we understand the true rule to be. The instruction requested by the defendant was as follows: "The jury is instructed that the Village of Mullan cannot be held guilty of negligence for every act or omission which would constitute negligence on the part of an individual. Much discretion is vested in such bodies. For instance: A village is not guilty of negligence for a failure to build sidewalks on all its streets, but when it has constructed a walk

it must be kept in a reasonably safe condition.'' The court modified this instruction by inserting after the word ''constructed'' the words ''or maintains'' and striking out the word ''reasonably,'' leaving the last clause of the sentence, when given to the jury, reading as follows: ''But when it has constructed or maintains a walk it must be kept in a safe condition.'' The insertion of the words ''or maintains'' was entirely proper, but the striking out of the word ''reasonably'' broke the entire force of the instruction so far as the defendant was concerned and tended to accentuate the necessity for the village maintaining its walks in absolute safety. This is an impossibility and is not expected of municipalities. The authorities are uniform in holding that all that is expected of such corporations is that they maintain their walks and crossings in a ''reasonably safe condition'' for use in the ordinary and usual modes of travel.

In view of the fact that a new trial must be had in this case, it will be necessary for us to briefly notice some further assignments of error as to the admission and rejection of evidence.

The defendant demanded, under sec. 4209, Rev. Codes, an itemized statement of the claim for $500 paid out and expended for nurse hire and medical services by the plaintiff. The statement was not furnished within ten days as provided by the statute, but was delivered on the sixteenth day after service of the demand. The case was not called for trial for about seven months after the service of this itemized statement. At the trial the defendant objected to the introduction of any evidence of this claim or the items composing it on the ground that the statement had not been served within the ten days as required by the statute. The court overruled the objection and admitted the evidence. The appellant assigns the ruling of the court as error.

Without deciding in this case as to whether or not an action for tort falls within the provisions of sec. 4209, we are content to rest our decision sustaining the action of the trial court on the proposition that this provision of the statute is not mandatory but is rather directory. In our opinion, the

matter rests in the sound discretion of the trial court as to whether or not he will inflict the extreme penalty of the act on the guilty party and exclude all evidence of the claim. The defendant could certainly suffer no injury whatever on account of this statement being served six days late, where it had seven months thereafter to study the claim and prepare to meet the demands therein made. We are supported in our construction of this statute by the decisions of other courts on similar statutes. (See *McCarthy v. Mt. Tecarte Land & Water Co.*, 110 Cal. 687, 43 Pac. 391; *Silva v. Bair*, 141 Cal. 599, 75 Pac. 162; *Robbins v. Butler*, 13 Colo. 496, 22 Pac. 803.)

Subsequent to the injury and prior to commencing this action, Mrs. Miller filed a claim with the clerk of the board of trustees of the village, demanding payment of damages in the sum for which she subsequently sued. At the trial a copy of the original claim was offered in evidence and introduced as plaintiff's Exhibit ''A.'' This copy showed the claim in all respects as regular and the affidavit to the claim filled out in regular form, but there was no name of any officer attached as having administered the oath and attached his *jurat*. No objection was made to this claim by the board of trustees on the ground that it had not been properly made out and presented. The board acted upon it and rejected the claim and the clerk duly notified the claimants' counsel that the claim had been rejected. At the trial the defendant objected to the introduction of the copy on the ground that it was not verified as required by law. The contention is made that this claim should have been duly verified and presented to the board of village trustees in conformity with the requirements of sec. 2263, Rev. Codes, which provides as follows:

''All claims against the city or village must be presented to the council or trustees in writing, with a full account of the items, verified by the oath of the claimant, or his agent, that the same is correct, reasonable and just, and no claims or demands shall be audited or allowed unless presented and verified as provided for in this section; and no costs shall

be recovered against such city or village in any action brought against it for any unliquidated claim which has not been presented to the city council or board of trustees to be audited, nor upon claims allowed in part, unless the recovery shall be for a greater sum than the amount allowed with interest due.''

It is argued by respondent, however, that the word ''claims'' as used in this statute does not include torts, and that it was not the legislative intention to require demands for torts to be presented for audit and allowance. We have examined the authorities bearing on similar statutes very carefully and find a diversity of opinion on this subject among the courts of the several states. The great weight of authority, however, and it seems to us the better and sounder reason, is to the effect that a statute such as ours does not comprehend or include actions *ex delicto.* The state of Missouri has a statute (sec. 5854, Mo. Rev. Stat. of 1889) in almost the identical language of the foregoing section of our statute, and it has been uniformly held by the courts of that state that it does not apply to actions for tort. (*Haggard v. City of Carthage,* 168 Mo. 129, 67 S. W. 567; *Evans v. City of Joplin,* 84 Mo. App. 296.)

The supreme court of Nebraska holds to a similar view under a like statute in that state, and in *Nance v. Falls City,* 16 Neb. 85, 20 N. W. 109, the court said:

''We think the word 'claims' as used in the statute refers alone to those arising upon contract and not to claims arising, as in this case, from a tort. It was not intended that a city council should determine the money value of a person killed through a city's neglect.''

The supreme court of Oregon, in construing a like statute in that state, held in *Sheridan v. City of Salem,* 14 Or. 328, 12 Pac. 925, that the word ''claim'' does not embrace a demand for a personal injury. The court said:

''All claims arising out of the ordinary expenditures of the city are required to be presented to the common council for allowance before an action can be maintained thereon. But that arises out of a relation the claimant sustains to the

city, created by an employment or contract of some character. Thus, a person who performs service, or does something for the city, at its request, for which compensation is to be made, tacitly agrees that he will present his claim to the common council for audit and allowance. That is the only mode by which the city can pay him. He so understands it when he engages to perform the service, and he could not claim that there had been a refusal to pay, or that there had been any breach of the contract or obligation, until the common council had refused to audit his demand. But in cases of tort the action is for damages, and the party injured is under no more obligation to present the claim to the corporation than he would be to a private person who had done him a wrong. The reason of the rule only applies to the former class of claims, and not to the latter,—has no application whatever to them. . . . . The breach of payment in the action of *assumpsit* is a necessary allegation, but it does not figure at all in an action of trespass on the case. The city only agrees to pay a contracted indebtedness in case the claim is presented as mentioned, and the action is for a refusal to audit and allow it; but if it commit a tort, the action matures at once."

The supreme court of Washington in *Sutton v. Snohomish,* 11 Wash. 24, 48 Am. St. 847, 39 Pac. 273, in passing upon a statute similar to ours, said:

"The demands there spoken of are those arising out of the ordinary transactions of the city, and which may be examined and compared with the vouchers and 'audited' and not those resulting from violations of municipal duties."

The supreme court of Wisconsin has repeatedly held to the same effect. (See *Sommers v. City of Marshfield,* 90 Wis. 59, 62 N. W. 937, and cases there cited.) It has been uniformly held to the same effect under a like statute in the state of New York. (*Taylor v. City of Cohoes,* 105 N. Y. 54, 11 N. E. 282, and cases there cited.)

It seems to us that the correct and logical construction to be placed on the language used, in order to arrive at the legislative intent, is to be gathered from the subject matter with which the legislature was dealing. They were provid-

ing for the payment of lawfully incurred bills and expenditures and the regular disbursement of the public funds. The legislative department was making laws for the regular, legal and legitimate expenses of municipal government and were not dealing with the unlawful, wrongful and *ultra vires* acts of municipal authorities. Claims for torts arise out of the unlawful and wrongful acts of the municipality; the acts out of which they arise are committed not in conformity with but in violation of law. These acts, being out of the ordinary and legitimate business of the municipality, should be specifically mentioned by the statute in order to be included in the class with ''claims'' as that term is used in the usual, lawful business of the municipality. The average lawmaker or business man, in using the word ''claim'' in the sense of presenting an itemized account or demand, would never think of a demand for a personal injury being included within that term.

We hold, therefore, that it was not necessary, in order to maintain the action, that the claim be presented to the board of trustees for their approval.

Defendant objected to the witness, Dr. Moody, answering the following question: ''I will ask you to state to the jury, Doctor, whether or not it was a common knowledge in that vicinity of the bad condition of the sidewalk in that place in that vicinity.'' The court permitted the witness to answer over the objection of the defendant and the answer was as follows: ''I have heard rumor as to the condition of the sidewalk.'' Defendant then moved to strike out the answer. It was further developed on cross-examination of the witness that the ''rumor'' he had heard with reference to the bad condition of the walk did not apply to the particular place where Mrs. Miller was injured, but to the sidewalk generally in that vicinity, and that the rumors he had heard he could not attribute to any particular person or persons or confine them to any particular part of the walk nor to any specific times or dates. The answers elicited on cross-examination show the uncertainty and unwisdom of such a class of evidence. ''Rumors'' are too uncertain and indefinite and vague

to be admitted as evidence in any kind of a case. If the walk was in fact in such a bad condition that the public generally knew of it, and consequently the village officers must have necessarily known of the same, that might have been shown by proper and competent evidence. Other objections were likewise made to general statements by witnesses as to the bad condition of the sidewalk on Pine street and the crossing over Pine street at Second street. Evidence has been held admissible as to the general condition of the sidewalk in the vicinity of the place of the accident in cases where there was a conflict between the plaintiff and defendant as to the exact point at which the injury occurred. (*Armstrong v. Town of Ackley,* 71 Iowa, 76, 32 N. W. 180.) But in this case there was no conflict whatever as to the point at which the accident occurred. In such case it has been held that evidence of the unsafe condition of the walk at other places than that at which the injury occurred is incompetent and prejudicial; that although the corporation has been negligent as to the maintenance of its sidewalks at some places within the corporate limits, it cannot be held liable on that account for an injury occurring at a place where the sidewalk was in fact in apparently good repair. (*Dundas v. City of Lansing,* 75 Mich. 499, 13 Am. St. 457, 42 N. W. 1011, 5 L. R. A. 143, and cases there cited.)

In a case like this, if the plaintiffs were seeking to recover upon the ground of the obvious and notoriously bad condition of the walk immediately adjacent to or connected with the portion of the walk where the injury occurred, and of which the latter is a part, by reason of its age and state of decay of the whole walk, evidence of this character might be admissible to show such fact, and that although the walk was apparently good at the particular spot where the injury occurred, still that the whole walk was in such a general condition of decay that it amounted to a continuing danger and menace to the traveling public. (*Durham v. Spokane,* 27 Wash. 615, 68 Pac. 384.)

Complaint is also made by appellant on account of the action of the court in permitting the witness, Doctor Moody,

to testify that one Ford, who had some time in the past been a street commissioner in the appellant village, told him that he knew the walk was in bad condition, and had notified the street and alley committee to repair it, and told them that if they would furnish him with lumber and nails he would repair it himself. This evidence should not have been allowed to go to the jury in this condition. No pretense was made to show when Ford had been a street commissioner, nor the particular defect or particular portion of walk to which he had reference, nor the time at which he had notice of any defective condition in the walk or anything of that kind. On the contrary, it appears from the record that Ford was not street commissioner at the time that the accident occurred, neither does he appear to have known the exact place at which the accident occurred. Evidence of what Ford claimed to have told the street and alley committee was the purest hearsay anyway, and should not have been admitted. If any of this evidence could have been admissible, it would have been merely upon the theory that the street commissioner himself had notice of the dangerous condition of the walk, but such evidence should have been in some manner connected with the defect in point of time or dangerous condition of the walk.

It was shown on the trial by plaintiff that soon after the accident occurred the village reconstructed a cross-walk over Pine street at the Second street crossing. The defendant sought to show that this was done later in carrying out a general plan of reconstructing sidewalks and cross-walks and general improvement throughout the village. The court rejected the offer. While this was of no great importance, still we think it would have been proper to allow the evidence, for the reason that in cases where it is shown that repairs are made or a new walk is constructed immediately after an accident, juries are likely to conclude that the municipality at once recognized the dangerous condition of the walk, and they take the fact of reconstruction as evidence that the walk was in a dangerous condition. It was also proper for the defendant to show, if it could, that its officers had no notice,

either actual or constructive, of any danger or defect in this walk.

Judgment is reversed and a new trial ordered. Costs awarded to appellant.

Sullivan, C. J., and Stewart, J., concur.