# CAVINESS *v.* CITY OF VALE.

## (169 Pac. 95.)

**Mun'cipal Corporations — Sidewalks — Personal Injuries — Presenting Claim.**

1. Provision of Vale City charter, requiring all claims for damages to be filed within six months after accrual, does not require filing of claim for personal injuries on a sidewalk, which claim the charter, Section 200, further prohibited the city from paying.

**Municipal Corporations—Sidewalks—Construction and Repair.**

2. Though there is no municipal duty to build sidewalks in the first instance, and the city may leave its streets in a state of nature, yet, if it does build walks, it must use reasonable diligence to keep them in repair, and cannot shift the responsibility without giving other adequate remedy.

[As to extent of street or highway which municipality is under duty to keep in repair, see Ann. Cas. 1915B, 279.]

**Municipal Corporations — Sidewalks — Construction and Repair — Injuries to Persons.**

3. Since Vale charter, Section 197, requiring abutting owners to build sidewalks, and Section 200, absolving the city from liability

for personal injuries, due to defective walks, do not impair the remedy against city officers, or the abutting owner, if negligent, one injured on a defective sidewalk cannot recover from the city.

From Malheur: DALTON BIGGS, Judge.

In Banc.    Statement by MR. CHIEF JUSTICE McBRIDE.

This is an action against the City of Vale and A. W. Glenn, Saxon Humphrey, M. E. Thayer, H. R. Dunlop, and J. E. Lawrence, members of the council of said city, and B. W. Mulkey owner of a lot adjoining the sidewalk where the alleged injury hereafter described occurred, to recover damages for an injury alleged to have happened by reason of plaintiff stepping into a hole in a defective sidewalk.

By the provisions of the charter it is made the duty of all owners of property adjoining any street in the city to "construct, reconstruct and maintain in good repair, the sidewalks in front of said property." If any owner of such lot fails to construct or suffers any sidewalk to become out of repair, it is made the duty of the city marshal to post a notice upon the adjacent property, directing the owner to immediately repair the sidewalks, and to file an affidavit with the city recorder stating when and where such notices were posted; thereafter the city recorder is required to send by mail a notice to such owner to repair such defective sidewalk.

Section 197 of the charter provides that if the owner of such lot shall refuse to make such repairs within the time designated, the city engineer shall make the same, and shall report monthly to the council the cost of such repairs, and a description of the lot fronting upon the sidewalk upon which said repairs were made. The council was authorized to exercise the same general authority and supervision over sidewalk construction

and repair, as it had over street improvements; and was directed to approve the reports by the city engineer of expenditures for that purpose if found reasonable, and at least once a year to collect the cost of such repairs from the owners of adjoining property by assessment and sale, in the same manner as assessments for street improvements were collected. It was also provided that advances from the street and park fund to pay for such repairs, might be made at the discretion of the council, to be reimbursed by special assessment when collected.

Section 200 of the charter is as follows:

"Damage for Negligence. It is not only the duty of all owners of land within the city to construct sidewalks and to keep in repair all sidewalks constructed or existing in front of, along or abutting upon their respective lots or parts thereof and parcels of land, but such owners are hereby declared to be liable for all damages to whomsoever resulting, arising from their fault or negligence in failing to construct or put such sidewalks in repair, and no action shall be maintained against the City of Vale by any person injured through or by means of the lack of or defect in any sidewalk."

The complaint alleged that at all the times mentioned in the complaint there were sufficient funds in the hands of the city treasurer and available, with which defendants—the city and its councilmen—might have repaired the walk, and that by virtue of certain provisions of the city charter, which are set out in full in the complaint, said defendants had full power and authority to raise and provide sufficient funds for the repair of said sidewalk and put the same in safe condition for travel; that on the 9th day of December, 1915, at the time of the injuries complained of and for several months prior thereto, the sidewalk in front

of and along Lot 1 in Block 20 was and has been in a defective and dangerous condition, which was particularly described, and that said defects rendered travel over the same extremely unsafe and dangerous—particularly after nightfall, and that such condition was at the date of said injuries and for several months prior thereto known to each and all of the defendants.

That on October 15, 1915, the defendants—officers of said city—caused the following notice to be made out, posted and mailed to defendant Mulkey, the owner of the lot fronting on said defective sidewalk:

"NOTICE TO REPAIR SIDEWALK.

"To B. W. Mulkey:

"GREETINGS.

"You are hereby notified to repair the sidewalk abutting Lot No. 1, Block 20 of Original City of Vale, Malheur County, Oregon, on the N. & W. sides and along B and C Streets, in a good and substantial manner as provided by ordinance of the said City. Said repairs to be completed within 20 days.

"Dated and posted on the above described property, in Vale, Malheur County, Oregon, this 15th day of October, A. D. 1915.

"C. A. POWELL, City Marshal."

That defendant Mulkey received said notice in time to have repaired the walk; that between October 15, 1915, and December 9, 1915, the defendants carelessly and negligently permitted said sidewalk to be and remain out of repair, and in a dangerous, unsafe and defective order and condition, and carelessly and negligently failed and omitted to erect or cause to be erected any barrier, warning or other safeguard at or near upon said sidewalk so as to protect the traveling public from said dangerous and unsafe condition of said sidewalk, or to light or otherwise notify or inform the public of its dangerous and unsafe condition; that

on December 9, 1915, while plaintiff was walking over said walk she stepped into one of the large and dangerous holes therein, whereby she was injured, etc. The city charter required all claims against the city to be filed within six months after the accident happened. The complaint contained no allegation that this had been done.

.The defendant city filed a general demurrer to the complaint, which was sustained, and the plaintiff appeals.                                      Affirmed.

For appellant there was a brief over the names of *Mr. William H. Brooke* and *Mr. John L. Rand,* with an oral argument by *Mr. Brooke.*

For respondent there was a brief and an oral argument by *Mr. H. C. Eastham.*

For defendant B. W. Mulkey there was a brief over the name of *Messrs. McCulloch & Wood.*

For defendants A. W. Glenn, Saxon Humphrey, M. E. Thayer, H. R. Dunlop and J. E. Lawrence, there was a brief over the names of *Mr. H. C. Eastham* and *Mr. William Smith.*

Opinion by Mr. Chief Justice McBride.

It is contended that the complaint is insufficient as against the city for the reasons (1) that the claim was not presented within six months after the injury, as required by the charter, and (2) that by virtue of Section 200 of the city charter, the city is exempt from liability. We will consider these contentions in the order above named.

1. The first contention is settled adversely to the claim of respondent in *Sheridan* v. *City of Salem,* 14

Or. 328 (12 Pac. 925), wherein it was held that a provision of the charter which provided that "no claim against the city shall be paid until it is audited and allowed by the common council" did not apply to claims arising *ex delicto*. It is true that the language used in the Salem charter is probably not quite so comprehensive as the language employed in the Vale charter. The words "claim for damages" used in the Vale charter, if standing alone and without reference to other provisions of the charter, would seem to be broad enough to include claims arising *ex delicto*. But a fair construction would seem to be that which would refer the language to such claims as the charter authorized the city to audit and pay. The object was to give the city the option of examining into the merits of the claim and paying it without an action, if deemed proper. In view of the fact that Section 200 of the charter expressly declares that the city shall not be liable for claims of the character herein described, it cannot be held that it was in the legislative mind to require the presentation to the council of a claim which it was expressly prohibited from paying. To do so would be to require the performance of a vain and useless ceremony. The authorities upon this subject are conflicting and will be found collated in an exhaustive note in *Henry* v. *Lincoln,* 93 Neb. 331 (140 N. W. 664, as reported in 50 L. R. A. (N. S.) 174), and in *Miller* v. *Mullan,* 17 Idaho, 28 (104 Pac. 660, 19 Ann. Cas. 1107).

The next question presented involves the liability of the city. In the language of Justice THAYER in *Sheridan* v. *City of Salem,* 14 Or. 328 (12 Pac. 925): "It is the same old ugly question that has wearied the patience of courts and attorneys for many years." Very early in our judicial history in *O'Harra* v. *City*

*of Portland,* 3 Or. 525, it was held that a provision in a city charter that the city should not be liable for an injury occasioned by a defect in its sidewalk, was a valid exercise of the municipal powers. The case does not appear to have been very thoroughly argued or considered. The objection made was that the charter provision was violative of Article I, Section 21, of our Constitution, which provides that "No law impairing the obligation of contracts shall ever be passed." The court expressed its inability to see how this provision could possibly apply and overruled the objection summarily. No other constitutional phase of the case was argued or considered. The matter was again considered in *Rankin* v. *Buckman,* 9 Or. 253, which was not an action against the city but against the members of the board of trustees of the City of East Portland, for damages caused by a defective roadway. The charter provision involved in that case, was as follows:

"The City of East Portland is not liable to any one for any loss or injury to person or property growing out of any casualty or accident to such person or property, on account of the condition of any street or public ground therein, but this section does not exonerate any officer of the City of East Portland, or any other person, from such liability, when such casualty or accident is caused by the willful neglect of a duty enjoined upon such officer or person by the law, or by the gross negligence or willful conduct of such officer or person in any other respect."

In that case the court held that the effect of the charter provision in question was to shift the liability of the city and place it upon the delinquent officers. As the city was not a party, this part of the opinion was merely *dictum* and yet it has largely furnished the

foundation for similar holdings by this court: *Colby v. City of Portland,* 85 Or. 359 (166 Pac. 537).

*Mattson* v. *Astoria,* 39 Or. 577 (65 Pac. 1066, 87 Am. St. Rep. 687), involved the consideration of a provision of the city charter of Astoria, which provided that neither the city nor any member of the council should be liable for any injury arising for any damages resulting from the defective condition of any street, etc. The court held this provision void because repugnant to Article X, Section 1 of the Constitution, which provides that ''Every man shall have remedy by due course of law for injury done him in person, property or reputation.'' It was there conceded, however, following *O'Harra* v. *City of Portland,* 3 Or. 525, that where the remedy against the city officers was left intact, it was competent to exempt the city itself from liability.

In *Mattson* v. *Astoria* the court quotes with approval the following language from the opinion of Mr. Justice EARL in *Fitzpatrick* v. *Slocum,* 89 N. Y. 358:

''There must be a remedy in such a case, where one is injured, without any fault of his own, by a defect in one of the streets or bridges of the city,—either against the city or some one of its officers.''

The principal case is important as thoroughly establishing the doctrine that while the city may exempt itself, it can only do so when it leaves the injured person a remedy against someone. In *Batdorff* v. *Oregon City,* 53 Or. 402 (100 Pac. 937, 18 Ann. Cas. 287), this court announced another important doctrine relating to the right of cities to exempt themselves from liability, wherein the charter of Oregon City provided:

''Oregon City is not liable to anyone for any loss or injury to person or property growing out of any

86 Or.—86

casualty or accident happening to such person or property on account of the condition of any street or public ground therein; but this action does not exonerate any officer of Oregon City or any other person from such liability, when such casualty or accident is caused by the willful neglect of any duty enjoined upon such officer or person by law, or by the gross negligence or willful misconduct of such officer or person in any other respect.''

This court held the provision was invalid, Mr. Chief Justice MOORE, saying:

"It will be remembered that section 128 of the charter of Oregon City exempts that municipality from all accountabilty, and limits a recovery against its officers for injuries sustained in consequence of their failure to keep the streets in suitable condition for travel—whether it be on account of willful neglect of duty, gross negligence, or willful misconduct. If this clause be upheld as a valid exercise of the legislative will, it necessarily follows that a person will be remediless who sustains a pecuniary loss in consequence of an improved street being in a defective condition which was occasioned by ordinary negligence. As councilmen are liable for injury caused by their indifference in failing to repair a street, so, *a fortiori*, they might, by enactment, be rendered accountable when such neglect is the want of that diligence which even careless men are accustomed to exercise (4 Words & Phrases, 3168); but, where a recovery is restricted by the act of incorporation to gross negligence and limited to the officers of a city, the charter practically denies a remedy to any person injured, contravenes Section 10, Article I, Constitution of Oregon, is therefore void, and leaves the liability as it existed at common law, whereby the city is accountable for such negligence: *Mattson* v. *Astoria*, 39 Or. 577 (65 Pac. 1066, 87 Am. St. Rep. 687).''

This would seem to settle firmly the rule in this state, that before a city can exempt itself from a lia-

bility which exists both at common law and by virtue of our Constitution, it must provide an equivalent remedy; one reasonably adequate to serve the purpose of the one taken away. In subsequent cases it has been assumed that where a city charter provided in general terms that any officers of the city charged with the duty of keeping a street in repair, should be liable for injuries arising from their neglect to perform such duty, furnished an equivalent remedy, and that such provision was sufficient to exempt the city from responsibility.

In *Colby* v. *City of Portland*, 85 Or. 359 (166 Pac. 537), it was pointed out that such a provision did not furnish a remedy substantially equivalent to the one taken away, for the reason that while a city was liable on the principle of *respondeat superior* for the wrongful neglect of its officers to keep streets in repair, the members of the council were not so liable; but that if they had provided funds wherewith to make repairs and had used ordinary care in selecting subordinates to examine into the condition of the streets and provided an adequate system of reports from such subordinates, they were not liable for the negligence of such subordinates, and the charter had not attempted to make them so liable, and in the many divisions of duties of city officers there was such an amount of lost responsibility that the injured person's right of recovery was finally whittled down to a cause of action against some obscure inspector, usually irresponsible.

In the case last mentioned we intimated a doubt as to the constitutionality of a charter provision which took away from a citizen a perfectly plain and efficacious remedy, and left in its place a partial and unsubstantial one; and this conviction has grown stronger in the mind of the writer from further consideration of

the subject and examination of the authorities, as well as from a knowledge of the fact that the rule announced in *O'Harra* v. *Portland,* and *Rankin* v. *Buckman,* and followed in other cases, has not been found in practice to be workable to the extent of affording adequate redress to persons injured by reason of neglect in the repair of streets. In the language of WOODARD, C. J., *Rhines* v. *Clark,* 51 Pa. St. 96:

"To take away the common-law rights of a citizen without giving him a substantial and adequate redress by statute, would be oppression and injustice; would be violative of his constitutional immunities."

2. This is merely preparatory to a discussion of the concrete question here presented. There is no legal obligation resting upon a city to build sidewalks in the first instance. It may leave its streets in a state of nature and not be responsible for not having improved them, but if it chooses to improve them and thereby extends to the public an invitation to walk upon them, it must use reasonable diligence to keep them in repair. It cannot shift responsibility having once assumed it, without giving persons who may be injured by defective walks some reasonable adequate remedy for such injury.

3. In the case at bar the charter has not authorized the city to construct sidewalks; that duty is expressly imposed upon the abutting property owner. The council may direct him to make the improvement and prescribe the plan upon which it shall be made, but the duty to build the walk in the first instance and to keep it in repair thereafter, is primarily upon the property owner. It is true that if the property owner fails to keep a walk in repair, the law requires the city engineer after notice to the owner to make such repairs at his final expense; but after all it is the owner

who is primarily the person to make repairs. There
is justice under such circumstances in requiring the
owner to be responsible for any damage which may
ensue by reason of his neglect. If the city engineer
fails to give the notice required or if in default of the
owner making repairs, he or the council with knowl-
edge of such default, allows the defective condition
to continue, there is justice in requiring these delin-
quent officers and the owner to answer for such
delinquency, instead of saddling it upon the general
taxpayers. There is respectable authority for the
proposition that the legislature may entirely absolve a
city from liability for injuries arising by reason of de-
fective streets or sidewalks, and that such legislation
is not in derogation of a constitutional provision,
similar to Article X, Section 1 of our Constitution:
*Goddard* v. *Lincoln,* 69 Neb. 594 (96 N. W. 273).

But as already shown, this court has taken a differ-
ent view and held that in order to exempt a municipal
corporation an equivalent remedy must be provided.
Here the legislative authority has placed the primary
duty of constructing and repairing sidewalks upon the
owner of abutting property, and has expressly de-
clared such owner liable for failure to perform that
duty. It has not attempted to take away the remedy
that always existed against the officers of the city for
failure to cause repair of defects coming to their
knowledge, which latter remedy while not always
perfect and complete, will be found sufficient in
many cases. The owner of the abutting property is
*prima facie* solvent, and it is not required that the
remedy afforded should go to the extent of guarantee-
ing the immediate collection of any judgment that

might be obtained, if upon the whole it appears that it is plain and reasonably adequate.

The judgment of the Circuit Court is affirmed.

Affirmed.

Mr. Justice Moore concurs in the result.