Argued January 29, decided February 10, 1914.

# LANE *v.* WENTWORTH.

(133 Pac. 348; 138 Pac. 468.)

**Appeal and Error—Notice of Appeal—Service of Notice.**

1.   Under subdivision 1, Section 550, L. O. L., requiring a notice of appeal to be served on all adverse parties, and the original notice, with proof of service thereon, to be filed with the clerk of the court from which the appeal is taken, a notice of appeal by the defendant, which is served upon the plaintiffs, gives no jurisdiction as to a codefendant.

**Appeal and Error—Notice of Appeal—Admission of Service.**

2.   An admission of service of notice of appeal on M., not indorsed upon or attached to the notice as required by subdivision 1, Section 550, L. O. L., is insufficient to confer jurisdiction on the party admitting service, he not being an adverse party within the meaning of subdivision 1 of said section.

**Appeal and Error—Notice of Appeal—Necessity—Copartners.**

3.   Where a decree required one defendant to account to the plaintiff for corporate stock received by him from a codefendant who had held it in trust for the plaintiff, and expressly provided that the codefendant should be liable only if recovery could not be had from the holder of the stock, the codefendant was not an adverse party upon whom notice of appeal from the decree must be served as required by subdivision 1, Section 550, L. O. L.

## ON THE MERITS.

**Trusts—Trust Property Transferred to Third Person.**

4.   Where plaintiff was the owner of stock in a corporation, and on reorganization it was agreed that the stockholders in the old corporation should receive an equal number of shares in the new, which agreement was carried out as to all the stockholders except plaintiff, defendant, who, while he had notice of plaintiff's rights, received from the trustee who held the stock for plaintiff a number of shares in excess of that claimed by plaintiff in compensation for his influence in selling bonds of the corporation, held the shares in trust, and will be required to transfer them to plaintiff.

**Release—Construction and Operation—Liabilities Included.**

5.   Where plaintiff had a judgment against a corporation and an action pending against its successor on reorganization, his receipt to the successor in full payment of these matters, stating that it is in full of all demands against the successor or any stockholder therein, excepting a trustee who had held stock for plaintiff, reciting that it did not waive any right to proceed against the trustee, did not release defendant, to whom the stock had been transferred secretly, without plaintiff's knowledge, from his liability to transfer the stock to plaintiff.

From Multnomah: HENRY E. McGINN, Judge.

Department 1.    Statement by MR. JUSTICE BURNETT.

I. W. Lane began this suit in the first instance against H. C. Mahon, claiming that, in the organization of a corporation by these two and others, it was agreed that for the purpose of financing the institution all the stock should be subscribed by and in the name of Mahon, with authority to hypothecate the same, but always subject to the condition and trust that the plaintiff should have 6,500 shares par value of the stock, which should be transferred to him by Mahon on demand. The stock was pledged to the First National Bank of Eugene to secure money advanced for the business of the corporation. This, however, had been paid, and about that time it was determined to reorganize the corporation, and to that end what was known as the Coast Range Lumber Company was formed and took over the holdings of the original corporation. The capital stock was increased, and the plaintiff alleged that in the new concern, as in the old, all the shares were subscribed by and in the name of Mahon, subject to the same trust and agreement as before mentioned. Issues were formed on this complaint, and at the trial it was discovered that, instead of Mahon holding the stock at the time, he had transferred it all to the defendant G. K. Wentworth, who was not at that time a partner to the suit. The hearing was suspended and on leave granted, an amended complaint was filed, making both Mahon and Wentworth defendants, in which the history of the transaction, as before indicated, was given; and it was alleged that Mahon had transferred all the stock of the corporation standing in his name to Wentworth, who took the same with knowledge of, and subject to, the agreement before described. The prayer was that the defendants be required to account to plaintiff for 6,500 shares of the capital stock of the new corpora-

tion; that the defendant Wentworth be ordered to transfer the same to plaintiff, failing in which that the plaintiff have judgment against both defendants for the value of the stock and for further relief.

Wentworth answered this complaint traversing it in material particulars, and the trial was completed, resulting in a decree to the effect that Wentworth, within ten days from the date of the decree, transfer to the plaintiff 6,500 shares of the capital stock of the new company, and upon his failure to do so, that the plaintiff recover from Wentworth the sum of $65,000, the reasonable value of the shares, together with costs; and further, that in case Wentworth failed to comply with the decree and the plaintiff could not enforce the collection of his judgment against him, either wholly or in part, Mahon should perform what was required of Wentworth, and finally that no execution should issue upon the property of Mahon until an execution had first been issued against the property of Wentworth and a return made thereon that it was unsatisfied. From this decree Wentworth appealed, serving his notice upon Lane, filing it some time in the month of December, 1912, having indorsed thereon proof of service upon Lane, together with an undertaking on appeal. Afterward, in January, 1913, there was filed in the Circuit Court a paper containing title of cause, after which follows this language:

"Copy of notice of appeal and undertaking on appeal in the above-entitled matter on the part of defendant G. K. Wentworth is hereby acknowledged and service thereof admitted at Portland, Oregon, this 13th day of January, 1913.

"GEORGE A. PIPES,
"Attorney for H. C. Mahon."

The plaintiff now moves to dismiss the appeal of Wentworth "for the reason that this court has not ac-

quired jurisdiction because no valid or legal service of notice of appeal was ever made or filed with.respect to the defendant H. C. Mahon.''

MOTION OVERRULED.

*Mr. A. E. Clark* and *Mr. Fred L. Everson,* for the motion.

*Messrs. Coovert & Mannix* and *Messrs. Stapleton & Sleight, contra.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. It is essential to the validity of an appeal that the notice be served on all adverse parties and the original be filed with proof of service indorsed thereon with the clerk of the court in which the judgment, appeal, or order from which the appeal is taken is entered: Section 550, subd. 1, L. O. L. It has often been decided by this court that compliance with this section is jurisdictional. It follows that no jurisdiction was obtained over Mahon by the service of the notice of appeal on Lane, and filing the same in the Circuit Court, having indorsed thereon only the proof of service on Lane.

2. This is not cured by the subsequent filing of a separate paper indicating admission of service; the same not being indorsed upon or attached to the notice of appeal. It is essential, then, to determine whether Mahon is an adverse party. It has constantly been determined by this court that, although parties are both plaintiffs or both defendants, yet if an appeal would unfavorably affect the rights of one of them, as determined by the decree appealed from, he is an adverse party as respects his coplaintiff or codefendant, and that the jurisdiction of this court depends upon

service of the notice upon all such parties: *The Victorian,* 24 Or. 121 (32 Pac. 1040, 41 Am. St. Rep. 838); *Moody* v. *Miller,* 24 Or. 179 (33 Pac. 402); *Osborn* v. *Logus,* 28 Or. 302 (37 Pac. 456, 38 Pac. 190, 42 Pac. 997); *Stuller* v. *Baker County,* 30 Or. 294 (47 Pac. 705); *Conrad* v. *Pacific Packing Co.,* 34 Or. 341–343 (49 Pac. 659, 52 Pac. 1134, 57 Pac. 1021); *Cooper Mfg. Co.* v. *Delahunt,* 36 Or. 403, 404 (51 Pac. 649, 60 Pac. 1); *Hafer* v. *Medford etc. R. R. Co.,* 60 Or. 356 (117 Pac. 1122, 119 Pac. 337).

3. We note, however, that, by the terms of the decree appealed from, Wentworth is made liable to the plaintiff antecedently to Mahon; that by the terms of the decision the liability of Mahon is secondary to that of Wentworth; and that only in event of Wentworth's failure to comply with the judicial settlement is the plaintiff entitled to look to Mahon for satisfaction. Under such conditions the liability of Mahon cannot rise above or be greater than that of Wentworth. If the accountability of Wentworth is extinguished, that of Mahon, as defined by this decree, will also be obliterated. If on the appeal the decree were reversed as to Wentworth, the situation resulting would not be one in which Wentworth would have failed to comply with the decree against him, and it is only in the event of such a lapse on the part of Wentworth that the plaintiff is entitled to look to Mahon by virtue of the decree.

It having been alleged in the complaint that Mahon had transferred all the shares of stock to Wentworth, the court could not rightly direct Mahon to perform the impossible act of transferring the same shares to the plaintiff. Under the allegations of the complaint, if any transfer of stock is to be made, it must be made by Wentworth. Without intending this to be a decision of the principal questions involved, it is suffi-

cient for the purposes of this motion to say that in no event can the situation be made worse for Mahon than it already is, and a possible modification or reversal of the decree could not but operate in his favor. Consequently, as between himself and Wentworth, Mahon is not an adverse party, and it was not necessary to serve upon him the notice of appeal.

The motion to dismiss the appeal is overruled.

MOTION OVERRULED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE MOORE and MR. JUSTICE RAMSEY concur.

———

Decided February 10, 1914.

ON THE MERITS.

(138 Pac. 468.)

Department 1.    Statement by MR. JUSTICE RAMSEY.

This is a suit in equity by I. W. Lane for a decree requiring the defendant, G. K. Wentworth, to transfer to the plaintiff 6,500 shares of the capital stock of the Coast Range Lumber Company, or, if he fails or refuses to do so, for a decree against him for the value thereof, etc. The court below rendered a decree in favor of the plaintiff. The defendant G. K. Wentworth appeals. H. C. Mahon does not appeal. The facts appear in the opinion of the court. AFFIRMED.

For appellant there was a brief over the names of *Messrs. Coovert & Mannix* and *Messrs. Stapleton & Sleight,* with an oral argument by *Mr. R. Sleight.*

For respondent there was a brief over the names of *Mr. A. E. Clark* and *Mr. Fred L. Everson,* with an oral argument by *Mr. Clark.*

MR. JUSTICE RAMSEY delivered the opinion of the court.

This is a suit in equity for a decree requiring the defendant G. K. Wentworth to transfer to the plaintiff 6,500 shares of the capital stock of the Coast Range Lumber Company, or, in case he should fail or refuse to make such transfer, for a decree against him for the value of said stock, etc.

The suit was originally brought against the defendant H. C. Mahon alone; but subsequently the plaintiff, with leave of the court, amended his complaint, and made G. K. Wentworth a defendant.

As no question arises as to the sufficiency of the pleadings, it is not necessary to set out any part thereof.

In March, 1907, the Sunset Lumber Company, a corporation, was organized with a capital stock of $500,000, divided into shares of $10 each. The plaintiff did a large amount of work in organizing and promoting said company, and others performed certain services in connection with the organizing and promotion of said corporation. After said company was incorporated and organized, the plaintiff turned over to it certain options for the purchase of timber lands which he had obtained. In consideration of the service that the plaintiff had rendered, as stated *supra,* and of the transfer of said options to said company, it was agreed by and between said company and the plaintiff, and between the defendant H. C. Mahon, E. O. Samuels, T. R. Yerger, and the plaintiff, all of said persons being the original stockholders of said company, that the plaintiff should receive 6,500 shares of the fully paid-up capital stock of said company, of the par value of $10 per share.

When said company was organized it was deemed advisable, for convenience, and in securing a loan for

said company, that the stock of the above-named persons should be held in the name of one of their number, and it was agreed that said stock should be subscribed for and held in the name of the defendant H. C. Mahon, in trust for said persons, as follows: 6,500 shares for E. O. Samuels, 6,500 shares for T. R. Yerger, 6,500 shares for H. C. Mahon, and 6,500 shares for I. W. Lane, the plaintiff. In accordance with said agreement said stock was subscribed for by the defendant H. C. Mahon, and issued to him, to be held by him in trust for said persons, according to their several interests, as stated *supra.*

In June, 1910, the stockholders of said company decided to reorganize said company under a new name. On June 9, 1910, the following preamble and resolution was unanimously adopted at a meeting of the stockholders of said company:

"On motion of Mr. R. H. Kipp, duly seconded by Mr. G. F. Skipworth, the following resolution was offered: 'Whereas, the Sunset Lumber Company, a corporation, is indebted to various and divers persons in the sum of approximately one hundred and ten thousand dollars ($110,000); and whereas, a corporation is about to be organized and known as the Coast Range Lumber Company; and whereas, the Coast Range Lumber Company, in consideration of the sale and transfer of all the property belonging to the Sunset Lumber Company, both real and personal, to the Coast Range Lumber Company, the Coast Range Lumber Company agrees to assume and pay all of the indebtedness of the Sunset Lumber Company; and whereas, as a further consideration of said sale and transfer, the stock of the Sunset Lumber Company is to be surrendered and exchanged for stock of the Coast Range Lumber Company, the stock so exchanged to be of the same par value as the stock in the Sunset Lumber Company, and the said stockholders of the said Sunset Lumber Company are to receive an equal amount of stock in the Coast Range Lumber Company

for the stock each stockholder owns and holds in the Sunset Lumber Company: Therefore, be it resolved, that the stockholders of the Sunset Lumber Company do hereby agree to the above proposition, and do hereby authorize the directors of the Sunset Lumber Company to transfer said property of said Sunset Lumber Company to the Coast Range Lumber Company, upon the terms and conditions set forth in this resolution, and they are hereby authorized to do any and every thing necessary for the purpose of consummating said sale and transfer, upon the said terms and conditions set forth.' ''

This preamble and resolution, adopted by the stockholders of said company, shows that it was the intention and agreement of all the stockholders of said company that, in the reorganization under a new name, each stockholder in the old company should have in the new company the same number of shares of stock that he had in the old company. It is important to bear this in mind, for this feature of the plan for the reorganization was never changed.

On June 9, 1910, the date of the adoption of said preamble and resolution, articles of incorporation of the Coast Range Lumber Company were prepared, and executed, and acknowledged by J. H. Mahon, R. H. Kipp, and H. Koepke, and witnessed by I. W. Lane and G. F. Skipworth; each of said persons being a stockholder of the Sunset Lumber Company. These articles of incorporation were not filed in the public offices until later. In connection with this reorganization, the plaintiff did much work.

In February, 1911, the said reorganization of said company was completed under the articles of incorporation executed June 9, 1910, as stated *supra,* and the name of the new company is ''The Coast Range Lumber Company.'' At this reorganization all of the assets of the old company, including all options for

the purchase of timber land, were transferred to the new company, and the new company assumed the payment of all of the debts of the old company. On the organization of the new company, the defendant H. C. Mahon subscribed for *all* of the stock of the new company, excepting *five* shares. The amount subscribed for by him was 49,995 shares, and the whole number of the shares of the capital stock being 50,000, and the par value of each share being $10.

On pages 29 and 31 of the Record Book of said new company, which is plaintiff's Exhibit A-3, it appears that H. C. Mahon, at the date of the organization of said new company, transferred to it approximately 4,080 acres of timber land, etc., for $499,950 of the capital stock of said company, and that the company accepted said transfer, and, in consideration thereof, issued to him $499,950 of the stock of said company.

The property so transferred to said company by H. C. Mahon was *all* of the assets of the Sunset Lumber Company. This property did not belong to Mahon, and the shares of stock transferred to him in exchange for said property were issued to him in trust for the stockholders of the old company (including himself).

The plaintiff claims that he owned $65,000 of the stock of the old company, and that, according to the agreement and understanding of all of the parties concerned in said reorganization, he was entitled to have transferred to him $65,000 of the stock of the new company that was subscribed for by and issued to Mahon, in consideration of the sale to the new company of the assets of the old company. The defendants, by their pleadings, deny this claim of the plaintiff, and the question for decision is whether this contention of the plaintiff is true.

If, at the time that the assets of the old company were transferred to the new, he owned $65,000 of the stock of the old company, and said reorganization was effected with the understanding and agreement, among the parties that brought it about, that, in consideration of the transfer of the assets of the old company to the new, the new company assumed the debts of the old company, and it was agreed, also, that each stockholder in the old company was to have, in consideration of said transfer, the same number of shares of stock in the new company that he had in the old company, then the plaintiff is entitled to have transferred to him $65,000 of the stock of the new company, and he has a right to have such stock transferred to him by the defendant Wentworth, if the latter took a transfer of said stock from Mahon without consideration, or with knowledge or notice of the plaintiff's right to said stock.

There is some conflict in the testimony; but the material facts are established by a clear preponderance of the evidence. It is clearly proved that the plaintiff owned, at the time of the transfer of the assets of the old company to the Coast Range Lumber Company, as stated *supra,* $65,000 of the capital stock of the Sunset Lumber Company. Parts of this stock were held, at times, as collateral for money that he had borrowed; but he paid these debts, and his stock was released from such liens. Some of the owners of stock in the old company contemplated making assessments on their stock for betterments, and, if these improvements had been made, some deduction would have had to be made therefor. However, those improvements were not made. There is no proof that the plaintiff sold any of his stock. We hold that a preponderance of the evidence shows that the plaintiff owned, at the

time of the formation of the new company, $65,000 of the stock of the old company.

4. On June 9, 1910, when the articles of incorporation for the new company were executed as stated *supra,* the stockholders of the old company, including the plaintiff and the defendant Mahon, at their annual meeting, as shown *supra,* unanimously adopted a preamble and resolution in favor of forming a new company, and of transferring to it all of the assets of the old company, and it was expressly stated, in said preamble that the new company should assume and pay all of the indebtedness of the Sunset Lumber Company, and that the stock of the latter company should be exchanged for stock in the new company, and that the stockholders in the old company should receive of the stock in the new an amount equal to what they owned in the old company. The same persons that adopted said preamble and resolution executed or caused to be executed said articles of incorporation for the new company, and said new company was organized for the purpose of taking over all of the assets of the old company, and assuming its obligations to its creditors and its stockholders, and for the purpose of effecting said exchange of stock. While, under the advice of counsel, to the effect that the new company could not take over the old company's property in all respects as planned by the preamble and resolution set out *supra;* the said preamble and resolution was revoked, the evidence shows that said plan was carried out, in substance, as to all persons *but the plaintiff.*

The evidence shows that all of the property of the old company was taken over by the new company, and that the latter paid all of the debts of the old company, and that, in consideration of receiving the assets of the old company, the new company issued to the

defendant Mahon all of the $500,000 of the capital stock of the new company, *but five shares.*

The evidence shows, also, that said assets belonged to the old company, and not to Mahon, and that Mahon received said stock as trustee for the stockholders of the old company, and that each stockholder of the old company was entitled to receive from Mahon, as trustee, as many shares of the capital stock of the new company as he owned in the old company.

The evidence shows, also, that every stockholder in the old company (*excepting the plaintiff*) received from Mahon, as trustee, as many shares of the stock of the new company as he had in the old company, and that he received such stock in the new company in exchange for the stock in the old company, and without paying anything for it. A few of the stockholders in the old company, as shown by the evidence of Mahon (evidence, page 323), instead of receiving stock in the new company, received cash in lieu thereof. But he admits that every stockholder of the old company, *excepting the plaintiff,* received in exchange for his stock in the old, an equal amount in the new company, or received cash in lieu of stock in the old company. This was carrying out the plan set forth in the preamble and resolution set out *supra,* as to all persons but the plaintiff.

The defendant Mahon testifies (page 297 of the evidence) that each stockholder in the old company was to have stock in the new company equal in amount to what he had in the old company, and he admits that Lane was entitled to $65,000 worth of stock in the old company (evidence, page 340), and he asserts, on page 290 of the evidence, that he was never opposed to Lane's getting stock in the new company. He admits (evidence, page 294) that, in a conversation with Lane, Skip-

worth, and others, he said that Lane was entitled to $65,000 of stock in the new company.

The defendant Wentworth admits (page 379 of evidence) that he knew that Lane was to have a certain amount of stock in the old company. In a letter to Wentworth, dated December 15, 1910, Lane expressly stated that he had $65,000 of stock in the old company. In other letters and orally, at different times, Lane informed Wentworth of the stock that he owned in the old company. Lane also informed Wentworth, at different times before Mahon assigned to him the stock, that he claimed and was entitled to $65,000 of the stock in the new company, held by Mahon in trust, in exchange for his stock in the old company.

The defendant Wentworth knew, also, that the assets of the old company that were transferred to the new belonged to the old company, and not to Mahon, and that the stock that Mahon had in the new company was paid for with the property of the old company, and that Mahon held said stock as trustee for the owners of the stock in the old company. Excepting the $100,000 in stock which was transferred to Wentworth for his influence in selling the bonds, the stock that was transferred to him by Mahon was received by him with notice that it was held in trust, and that Lane claimed and was entitled to $65,000 thereof. He received said stock with notice that $65,000 thereof belonged to the plaintiff, and he holds said stock in trust for the plaintiff, and it is his duty to transfer it in due form to the plaintiff.

The manner in which the defendants "eliminated" the plaintiff from the new company was contrary to that good faith and fairness that usually obtains among business men. It is not necessary to go into various other matters discussed in the briefs and at

the hearing. The case was argued with ability on each side.

5. The receipt mentioned in the fourth. assignment of error had no relevancy to the plaintiff's right to recover this stock. The receipt was not intended to apply to a suit for said stock, which was supposed, at that time, to be be held by the defendant Mahon.

This stock was issued to Mahon in trust for the plaintiff, and Mahon had no right to transfer it to the defendant Wentworth. The plaintiff, when said receipt was signed, had a right to believe, and did believe, that said stock still stood in Mahon's name, and this fact is shown by the last clause of said receipt. The transfer was secret. When this cause was commenced, the plaintiff believed, as he had a right to believe, that Mahon still held the stock, and he sued Mahon alone; but, when he learned that Mahon had assigned the stock to Wentworth, he amended his complaint, and made Wentworth a party. The receipt was not given to Wentworth, and his name is not mentioned in it. Lane had a judgment against the Sunset Lumber Company, and had an action pending against the Coast Range Lumber Company. The latter company paid Lane the money for which the receipt was given, in full for payment of said matters. Said receipt states, also, that said money was received in full of all demands against the Coast Range Lumber Company *or any stockholder therein,* excepting H. C. Mahon, for accounting, or for any part of the capital stock of said Coast Range Lumber Company, and then the receipt adds: "But this receipt shall not be taken as waiving any right on my part hereafter to proceed against said H. C. Mahon, in any suit for accounting or otherwise, for the purpose of obtaining part of the said H. C. Mahon's capital stock in said

company or its value, or any cause of action which I may have against him.''

The foregoing clause of said receipt shows that Lane understood, as he had a right to understand, that Mahon still had the stock that he claimed to own, and Lane expressly reserved the right to sue him to obtain said stock. The secret and wrongful transfer of said stock by Mahon to Wentworth was unknown to him, and he was not guilty of negligence in not knowing it. Under these circumstances, said receipt is not a release of Lane's right of suit to pursue said stock into the hands of Wentworth, who is a wrongful assignee thereof from Mahon.

In *Todd* v. *Mitchell,* 168 Ill. 201, 202 (48 N. E. 35), the facts were, in brief, that there were matters of difference between the plaintiff and the defendant respecting some real estate transactions, and Mitchell had sued Todd for an accounting. They settled said action, and both signed a release, acknowledging the settlement of said controversy, and this release contained, also, the following words: '' * * And in consideration aforesaid [we] do hereby forever release and discharge each other *from any and all claims and demands of any name and nature whatsoever* which either may have against the other.'' Subsequently Todd sued Mitchell for a breach of a covenant of warranty in a deed, executed prior to the signing of said release, and Mitchell relied on said release as a defense. Passing on said release, the court in said case says: ''It [the release] relates to these particular matters [concerning the profits in a real estate transaction, etc.], and these alone. This construction is aided by the facts of the case which tend to show *that the breach of the covenant of warranty could not have been in contemplation of the parties,*

69 Or.—17

*because unknown to the appellant at that time* as an existing claim. * * There is no pretense that this breach of the covenant of warranty had been compromised or adjusted, and such language cannot possibly be construed to have reference to that.''

In *Grumley* v. *Webb,* 44 Mo. 445 (100 Am. Dec. 304), the syllabus is: ''A receipt given in full satisfaction of a certain judgment therein specified, and also of *'all claims and demands,'* will not avail against another suit pending between the same parties, and *not shown to have been intended by·them to be included in the receipt.* Language, however general in its form, when used in connection with a particular matter, will be presumed to be used *in subordination to that matter,* and will be construed and *limited* accordingly'': See, also, on this point, *Van Slyke* v. *Van Slyke,* 80 N. J. Law, 382 (78 Atl. 179, Ann. Cas. 1912A, 498, 31 L. R. A. (N. S.) 778).

As the facts show that, when this receipt was signed, Lane did not know that the stock in dispute had been transferred by Mahon to Wentworth, and as he reserved, by the terms of the receipt, the right to sue Mahon to obtain this stock, it is clear that said receipt was not intended to settle or bar Lane's right to pursue said stock into the hands of Wentworth, a wrongful assignee thereof, and recover said stock or its value from him. It was not the intention of the parties, by said receipt, to bar Lane from recovering said stock wherever it should be found to be.

It is not necessary to go into other matters referred to in the brief and at the hearing. We hold that the findings and the decree of the court below are correct, and we affirm them.

The value of the stock is not clearly shown by the evidence; but stock is presumed, *prima facie,* to be worth its face. There is evidence showing that some

of the stock of the company sold for $2 a share; but this is not shown to be its reasonable value. We will let the matter of value stand as it was found by the court below. The defendant Wentworth has a large amount of the stock of the Coast Range Lumber Company, and he can deliver 6,500 shares thereof to the plaintiff, and thereby satisfy the decree, excepting as to costs and disbursements.

We find that, of the capital stock of the Coast Range Lumber Company held in his name by the defendant G. K. Wentworth, at the time this suit was begun, said defendant held, and now holds, 6,500 shares thereof in trust for the plaintiff, I. W. Lane, and that Lane is the owner of said stock, and entitled to have the same duly transferred to him by the defendant Wentworth at once; that said stock is worth $10 per share; and that the plaintiff is entitled to a decree of this court affirming the decree of the court below, and a decree of this court against the appellant, G. K. Wentworth, and his surety on his undertaking for the appeal, and for a stay of proceedings, for costs and disbursements in the court below and in this court, and for the delivery to the plaintiff, I. W. Lane, within 20 days from the date of the entry of the decree of this court in the journal of the court below of 6,500 unencumbered shares of the capital stock of the Coast Range Lumber Company in due form of the par value of $65,000, or, upon his failure to do so, that the plaintiff have and recover of and from said G. K. Wentworth and of and from his surety, the Ætna Accident and Liability Company, the sum of $65,000, the value of said stock.

The decree of the court below is affirmed.

AFFIRMED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BURNETT concur.