Argued May 14, reversed and remanded July 3, rehearing denied
September 11, 1917.

## COLBY *v.* CITY OF PORTLAND.*

(166 Pac. 537.)

**Appeal and Error—Notice of Appeal—Parties to be Served—"Adverse
Party."**

  1.  In pedestrian's action against city and its officers for injuries,
where the city went out on nonsuit, failure of the other defendants
to serve notice of appeal on the city was not ground for dismissal

———

*On personal liability of highway officers for negligence, see notes
in 22 L. R. A. 824; 52 L. R. A. (N. S.) 142; L. R. A. 1916B, 1186.
                                                    REPORTER.

of the appeal, in that the city was an "adverse party," within Section 550, L. O. L.

**Municipal Corporation—Streets—Failure to Repair—Liability.**

2. Under Portland city charter, empowering the council to make needful regulations to maintain public streets, it is the imperative duty of the city council to see that the streets are kept in good repair.

**Municipal Corporations—Streets—Failure to Repair—Liability.**

3. The duty of the city council of Portland to keep its streets in repair does not end with the passage of an ordinance requiring officers to examine into and report the condition of streets, but there must be some diligence to learn whether the officers perform the duties assigned.

**Municipal Corporations—Streets—Failure to Repair—Liability.**

4. The duty of a Portland councilman as to repair of streets, in the absence of actual knowledge of a defect, is performed when he has used his best efforts to provide means to keep streets in repair and to have a sufficient force of employees to report defects as they occur and to make the repairs.

**Municipal Corporations—Streets—Failure to Repair—Liability.**

5. The liability of each Portland officer for failure to make repairs to streets is personal, and depends upon the diligence which he himself exercises.

**Officers—Negligence of Inferior Officer—Liability.**

6. It is the universal rule that a public officer is not personally liable for the negligence of an inferior officer, unless he, having the power of selection, has failed to use ordinary care in the selection.

**Municipal Corporations—Streets—Failure to Repair—Liability.**

7. Section 281 of the charter of the City of Portland, which attempts to exempt the city from liability for injuries arising from defective streets and to place that liability upon the officer by reason of whose negligence the injury occurred, does not create any new or additional obligation as against such officer, as a city official who personally neglects to perform a specific duty was always liable, irrespective of any statute prescribing such liability.

[As to liability of municipal corporation for defects in, or failure to repair streets, see note in 103 Am. St. Rep. 257.]

**Municipal Corporations—Streets—Failure to Repair—Liability.**

8. Regardless of charter provision exempting City of Portland from liability for injuries to pedestrians by reason of defects in streets, the city is liable on the doctrine of *respondeat superior* for a failure of a street inspector to repair a defect which caused an accident.

**Municipal Corporations—Streets—Failure to Repair—Liability.**

9. While, before attempted exemption of City of Portland from liability for defects in streets, the negligence of its officers, either the council or subordinate officers, was imputable to it, such liability was not transferred to the shoulders of any city officer not actually or constructively negligent.

Municipal Corporations—Streets—Failure to Repair—Liability—Notice of Defects.

10.  A defect in a street, which was noticed by only a few residents of the immediate community, though it had existed for several weeks, was not so notorious as that the city or its officers should have known thereof, so as to charge them with negligence in failing to make repairs.

Municipal Corporations—Streets—Failure to Maintain—Liability—Evidence—Admissibility.

11.  Since it is the Portland city engineer's duty to inspect all streets and walks, in estimating his diligence, it is proper to show the mileage of streets in the city and the efforts made by him personally to secure a proper and complete inspection and repair.

From Multnomah: JOHN P. KAVANAUGH, Judge.

Action by Victoria I. Colby against the City of Portland, a municipal corporation, H. E. Albee, Charles A. Bigelow, William L. Brewster, Robert G. Dieck, Will H. Daly and Phillip H. Dater. Reversed and remanded.

In Banc.   Statement by MR. CHIEF JUSTICE McBRIDE.

This was an action for damages brought by the plaintiff against the City of Portland and other defendants, of whom Albee was mayor of the city, and Bigelow, Brewster, Dieck, and Daly, city commissioners, constituting the city council, and Dater, city engineer.   The complaint after alleging the corporate existence of the city and the official character of the other defendants alleged:

"That section 16, article I, chapter III, of the charter of the said city of Portland, as revised by said council on August 19, 1914, provides as follows: 'All powers conferred and duties devolved by the sections of the charter of 1903, not repealed by this charter, upon the executive board, and water board, and other boards and commissions, abolished by this charter, shall, from and after the adoption of this charter, be exercised and performed by the council'; that section 18, article I, chapter III, of said charter, provides as

follows: 'The council shall have and exercise all powers and authority conferred upon the city of Portland by this charter or by general law, except where such power is herein expressly bestowed upon some other officer to the exclusion of the council'; that section 20, article I, chapter III, of said charter, provides as follows: 'The power and authority given to the municipal corporation of the city of Portland is hereby vested in a council, consisting of the mayor and four commissioners, subject to the initiative and referendum and other powers reserved to the people by the constitution of the state of Oregon, as defined and prescribed by the provisions of the constitution and general laws relating thereto, and by provision of this charter and ordinances enacted in pursuance thereto.' * * That the defendant, Phillip H. Dater, was at all times hereinafter mentioned, and is now, the duly appointed, elected, qualified, and acting city engineer of said city of Portland. * * That section 304 of the charter of said city of Portland, as amended, provides, *inter alia,* as follows: 'The city engineer shall keep himself informed of the condition of all public streets, squares, parks, grounds, highways, bridges, sewers, and street lights, and all plans and specifications for the construction, improvement or repairs thereof shall be made by him or under his supervision; and he shall have supervision of all surveys of streets, squares, and parks, and all construction, improvements, and repairs herein specified, whether such work be done by contract or otherwise. Before any ordinance is passed for the improvement of any street, highway, or elevated roadway he shall certify in writing to the council as to the suitability of such proposed improvement to the needs and requirements of the city; he shall see that the provisions of all contracts, ordinances, and regulations relating to the construction, improvement, and repair of streets and property herein designated are strictly complied with, and no claim for work as herein specified shall be allowed or paid out of the city treasury without the certificate of the city engineer that said work has been

done to his satisfaction; * * ' and said section further provides: 'The city engineer shall keep proper records of all matters relating to the business of his office and report to the executive board or other boards, commissions, or the council from time to time such suggestions and recommendations as to matters connected with his department as he may deem expedient. It shall be the duty of the city engineer to make all surveys, plans, specifications, maps, and estimates for all public works in the city or on property belonging to the city, and to perform such other duties as may be required of him by the executive board, other boards, commissions, or council or ordinances of said city.' * * That section 34 of said charter as revised by said council provides, *inter alia,* as follows: 'The specific powers granted to the city under sections 73 and 73½ of the charter of 1903 shall continue to be exercised by the council as a part of the general grant made by the charter'; and it is provided by section 73 of the said charter of 1903 of the city of Portland: 'The council has power and authority, subject to the provisions, limitations, and restrictions in this charter contained: (12) To provide for the opening, laying out, establishing, altering, extending, vacating and closing, or for establishing and changing the grades of streets, squares, parks, public places, and to provide for the improving and repairing of streets, squares, parks, and public places or of any land over which any right of way has been obtained, or granted, for any purpose of public travel by means of any kind of work, improvement, or repair mentioned in this charter, subject to the provisions and limitations contained in this charter, and in the constitution of the state of Oregon'; and it is further provided by said section 73 of the charter of 1903 of said city of Portland that the said council has power and authority: '(60) Except as otherwise provided in this charter or in the constitution or laws of the state of Oregon to regulate and control for any and every purpose the use of the streets, highways, alleys, sidewalks, public thoroughfares, public places and parks of the city;

to regulate the use of streets, roads, highways, and public places for foot passengers, animals, bicycles, automobiles, and vehicles of all descriptions; (61) to regulate, restrain, and prevent obstructions within the public streets, sidewalks, and places and to make all needful regulations to keep and maintain the public streets, sidewalks and places in a clean, open, and safe condition for public use; to provide for the removal, impounding, and sale or other disposition of such obstructions upon five days' notice'; and it is further provided by section 36 of said charter as revised by said council that: 'The foregoing or other enumeration of particular powers granted to the council in this charter shall not be construed to impair any general grant of power herein contained nor to limit any such general grant to powers of the same class or classes as those enumerated.' * * That section 188 of said charter as revised aforesaid provides, *inter alia,* that: 'The council by ordinance shall estimate and declare the necessary amount of money to be raised by the general taxes and shall levy the necessary taxes therefor. * * The said tax shall be collected by the officer collecting the county tax and shall be turned over by him to the city treasurer within ten days after he has collected the same with a statement of the amount of money so collected and the year or years for which the amount was collected; * * ' and section 190 of said charter as revised aforesaid provides that: 'The council on or before the 31st day of December in each year shall levy upon all property not exempt from taxation taxes to provide for the payment of expenses of the city for the ensuing year; * * ' and section 34 of said charter provides, *inter alia,* that council shall have power and authority: 'To appropriate money to pay the debts, liabilities, and expenditures of the city or any part or item thereof.' "

It is further alleged that East Salmon Street in said city is a public street thereof and under the control and supervision of the defendants; that before the injuries complained of the defendant city had caused

said street to be improved and a wooden crosswalk to
be constructed and opened for public travel across the
street at the intersection of East Thirty-second Street
with East Salmon Street:

"That for a long time prior to and at the time of
plaintiff receiving the injuries hereinafter alleged and
complained of, said crosswalk was carelessly and negli-
gently permitted and allowed by the defendants, and
each of them, to be, become, and remain in a badly
defective, unfit, and dangerous condition in that a rot-
ten, defective, splintered, and loosened plank was per-
mitted and allowed to remain and be used as a part
of said crosswalk so as to render said crosswalk un-
fit and unsafe for use by the public, and said defec-
tive, unfit, and dangerous condition of said crosswalk
became and was at all times herein mentioned a mat-
ter of general and public concern; that at all times
herein mentioned said defendants, and each of them,
carelessly and negligently failed and omitted to repair
and reconstruct and cause to be repaired and recon-
structed said crosswalk at this point where said plank
was and remained, and failed and neglected to remedy
the said defective, unsafe, and dangerous condition
thereof so as to render said crosswalk safe for public
use and travel of the public thereon and thereover,
and said defendants, and each of them, at all times
herein alleged carelessly and negligently failed and
omitted to erect, and cause to be erected, barriers,
warnings, and other safeguards at and near and upon
said crosswalk so as to protect the traveling public
from said unfit, dangerous, and defective condition
thereof; and said defendants, and each of them, at all
times herein alleged, carelessly and negligently failed
and omitted to post a notice or warning and to other-
wise notify or inform the public of the unfit, unsafe,
and condition of said crosswalk."

That about May 6, 1915, plaintiff, while crossing
said walk and proceeding with due care for her own
safety and being wholly unaware of the unfit and

dangerous condition of the walk and of said loosened, splintered, and defective plank, caught her left foot therein and was thrown down, thereby sustaining serious and permanent injuries, which are set forth in detail and abundantly supported by the evidence; that the dangerous and unfit condition of said walk was well known to said defendants, and to each of them, or by the exercise of ordinary care and diligence on their part, and on the part of each of them, they could and should have known of it; that said crosswalk was in a common and public thoroughfare and used as such by the citizens of said city and others; that the duty of said defendants and of each of them as to said crosswalk was and became at all times mentioned in this complaint a matter of public and general concern; that at all the times mentioned in the complaint the city engineer failed and neglected to suggest or recommend to said city council any ways or means for the proper repairing or reconstruction of said walk in a fit, proper, and safe manner as provided by the charter of the city and the laws of the state, and in violation of the duties imposed upon him. In addition to general damages plaintiff claimed special damages for medical attendance and nursing.

The City of Portland, the mayor and commissioners, and the defendant Dater filed separate general demurrers, which being overruled the City of Portland answered with what is practically a general denial of the material allegations of the complaint and pleaded the following affirmative defense:

"That section 281 of the charter of the city of Portland as revised, codified, and arranged by the council of said city August 19, 1914, is as follows: 'No recourse shall be had against the city for damage or loss to person or property suffered or sustained by reason of the defective condition of any sidewalk,

street, avenue, lane, alley, court, or place, or by rea-
son of the defective condition of any sewer, or by
reason of any defective drainage, whether any of said
defects originally existed, or whether they were occa-
sioned by construction, excavation, or embankment;
nor shall there be any recourse against the city for
want of repair of any sidewalk, street, avenue, lane,
alley, court, or place,. or by want of repair of any
sewer; nor shall there be any recourse against the city
for damage to person or property suffered or sus-
tained by reason of accident on sidewalk, street,
avenue, lane, alley, court, or place, or by falling from
any embankment thereon or into any excavation
therein; but in such case the person or persons on
whom the law may have imposed the obligation to re-
pair such defect in the sidewalk, street, or public high-
way, or in the sewer, and also the officer or officers
through whose official negligence such defect remains
unrepaired shall be jointly and severally liable to the
party injured for the damage sustained.' "

The other defendants answered by a general denial
and by an allegation of contributory negligence on the
part of plaintiff.

The plaintiff filed a reply putting the new matters
alleged in the answer in issue, and the case was tried
before a jury on the 12th day of December, 1916.  The
testimony introduced by plaintiff tended to show that
plaintiff was ignorant of the defect in the walk, and
that while her residence was near the scene of the
accident she was not accustomed to cross the street
by way of the crosswalk placed where the accident
occurred; that she was proceeding in the usual man-
ner to cross the street and was pushing a baby-buggy
in which was an infant ahead of her when her foot
caught in the splintered portion of the walk, by rea-
son of which she was thrown down sustaining very
serious personal injuries.  Other witnesses testified
that many people traveled the street each day; that

the defect was open, patent, and visible, and had so existed for a period of from three weeks to three months there being considerable difference in their testimony as to the length of time; that the condition of the crossing had frequently been discussed in the neighborhood.  P. F. Hailey, a witness for plaintiff, testified that for some time previous to the accident he was an employee of the City of Portland in the capacity of a street and sidewalk inspector; that he had noticed the bad condition of the crosswalk, which had continued for from three to six weeks previous to the accident; that he resided within about 35 feet of the crosswalk, and while he would not say positively that he had reported it he may have mentioned it to Mr. Wheeler, the district inspector, who was witness' immediate superior.  Wheeler testified that no such report was made to him.  There was no evidence tending to show that either Albee, the mayor, Brewster, Bigelow, Daly, or Dieck, the commissioners, or Dater, the city engineer, ever had any actual notice or knowledge of the condition of the walk, and each testified that he had no such notice or knowledge; the sole contention upon the trial being that by reason of its notoriety they should have known it if they had exercised that reasonable diligence required of them as officers of the city.  There was a verdict and judgment against them for $6,350.20, from which they appeal.

REVERSED AND REMANDED.

For appellants there was a brief with oral arguments by *Mr. Walter P. LaRoche,* City Attorney, and *Mr. Henry A. Davie,* Deputy City Attorney.

For respondent there was a brief with oral arguments by *Mr. Harold V. Newlin* and *Messrs. Cleeton & McMenamin.*

Opinion by MR. CHIEF JUSTICE MCBRIDE.

1. This case involves an examination of the whole law respecting the liability of city officers for injuries arising from the defective condition of streets as well as a consideration of the responsibilities imposed upon the particular officers here impleaded by virtue of the provisions of the city charter. Before considering these we will pass upon a preliminary question raised by plaintiff regarding the sufficiency of the appeal. As before stated, the City of Portland at the conclusion of plaintiff's testimony moved for a nonsuit, which was granted although no formal judgment of nonsuit appears to have been entered. Thereafter it disappeared from the case. No appeal was taken by plaintiff from the allowance of the motion, and it may well be questioned whether any appeal therefrom could have been taken until the entry of a formal judgment of nonsuit. However, that question is not before us. The notice of appeal by these defendants was not served upon the city, and it is claimed by plaintiff that the city is an "adverse party" within the meaning of Section 550, L. O. L., which requires that the notice of appeal shall be served upon "such adverse party or parties as have appeared in the action or suit, or upon his or their attorney." "An adverse party is a party whose interest in the judgment appealed from is in conflict with the modification or reversal sought by appellant": *Smith* v. *Burns,* 71 Or. 133 (135 Pac. 200, 142 Pac. 352, Ann. Cas. 1916A, 666, L. R. A. 1915A, 1130). In *Lane* v. *Wentworth,* 69 Or. 242 (133 Pac. 348, 138 Pac. 468), Mr. Justice BURNETT, observes:

"It has constantly been determined by this court that, although parties are both plaintiffs or both defendants, yet if an appeal would unfavorably affect

85 Or.—24

the rights of one of them, as determined by the decree appealed from, he is an adverse party as respects his coplaintiff or codefendant, and that the jurisdiction of this court depends upon service of the notice upon all such parties: *The Victorian,* 24 Or. 121 (32 Pac. 1040, 41 Am. St. Rep. 838); *Moody* v. *Miller,* 24 Or. 179 (33 Pac. 402); *Osborn* v. *Logus,* 28 Or. 302 (37 Pac. 456, 38 Pac. 190, 42 Pac. 997); *Stuller* v. *Baker County,* 30 Or. 294 (47 Pac. 705); *Conrad* v. *Pacific Packing Co.,* 34 Or. 341, 343 (49 Pac. 659, 52 Pac. 1134, 57 Pac. 1021); *Cooper Mfg. Co.* v. *Delahunt,* 36 Or. 403, 404 (51 Pac. 649, 60 Pac. 1); *Hafer* v. *Medford etc. R. R. Co.,* 60 Or. 354, 356 (117 Pac. 1122, 119. Pac. 337).''

We can conceive of no way in which the interests of the City of Portland can be injuriously affected by this appeal. If the judgment of the Circuit Court should be reversed, that would not reinstate the City of Portland as a party defendant. If it should be affirmed, the plaintiff, would still be at liberty to begin another action—in fact, could have begun one at any time after the entry of judgment of nonsuit, and in case of a recovery have issued execution upon either judgment. Neither defendant could have called upon the other for contribution in any event as both were joint tort-feasors, if tort-feasors at all. So that in any view of the case we cannot say that as a *matter of law* the City of Portland would be injuriously affected by reason of any action we might take with reference to matters involved in the appeal.

2–6. We will now consider the case upon the merits. Among other provisions of the city charter we find the following:

''The city council shall have power and authority to regulate, restrain, and prevent obstructions within the public streets, sidewalks, and places, and to make all needful regulations to keep and maintain the pub-

lic streets, sidewalks, and places in a clean, open, and safe condition for public use," etc.: Subdivision 61 of Section 73, Portland Charter.

By subdivision 12 of said section the council is given power and authority "to provide * * for the improving and repairing of streets," etc. Other sections heretofore quoted in effect vest in the council all powers granted to the City of Portland by the charter. It is earnestly contended that the above provisions are purely legislative and impose no duty upon the council to repair the streets or any ministerial duties whatever. We do not so view the law. The power to control the streets of the City of Portland is one necessarily granted to it by its charter. The instrument by which it exercises that power is the city council. In *Rankin* v. *Buckman,* 9 Or. 253, this court, speaking through LORD, C. J., had occasion to construe certain sections of the charter of the City of East Portland which were practically identical with those here under discussion, and upon a complaint similar in terms to the one in the case at bar. That case disposes of many of the contentions made by defendants here. Mr. Chief Justice LORD, said:

"Having, then, the exclusive care and control of the streets and the means provided to repair them when defective, the duty which the law imposes upon the defendants is imperative to see that the streets are kept in a safe condition for the passage of persons and property, and if this plain duty is neglected and any one is injured, they are liable for the damage sustained."

This language must be taken with the qualification that neither the city nor its officers are insurers of the safety of the streets and of the persons using them, but it may be said that there rests upon the council an absolute duty to exercise reasonable diligence to

ascertain and keep itself informed as to the condition of its streets and to cause them to be repaired when defective. While such duties may in some instances involve the passage of ordinances or resolutions, they partake more of a ministerial than a legislative character, and in case of matters provided for by ordinance the duty does not end with the passage of an ordinance requiring certain officers to examine into and report the condition of the streets. There must be some diligence on the part of the council to ascertain whether such officers are performing the duties assigned to them, and what is reasonable diligence under the circumstances must depend upon a variety of conditions. Nobody could expect the councilmen of the City of Portland, with its twelve hundred miles of streets, to inform themselves personally as to the condition of the cross-walks in every part of the city, or, indeed, in any part of the city, unless such condition were so notoriously dangerous that it had become a matter of general public concern and discussion. The duty of a councilman in that respect, in the absence of any actual knowledge of a defect, is performed when he has used his best efforts to provide means to keep streets in repair and to have a sufficient force of employees to report defects as they occur, and other employees or subordinates to make the repairs. We do not propose to enter into any extended discussion of the law in such cases. The liability of each officer is a personal liability depending upon the diligence which he himself exercises as a guardian of the public weal to see that the streets are kept reasonably safe. It is in evidence here that the council had provided ample funds from which repairs might be made, that every policeman, and there are several hundred in the City of Portland, was in-

structed to report all defects in streets and walks, and that it had a city engineer and a corps of street inspectors whose duty it was to make such reports. There is no charge that the defendants were negligent in not providing funds or in failing to provide material, or guilty of negligence in the selection of employees or of lack of diligence in requiring reports as to the condition of the streets. None of these conditions are shown, but, on the contrary, it affirmatively appears that reasonable diligence has been exercised in all these respects. Counsel rest their whole case upon the circumstances that the defect had existed for so long a period and was so notorious the councilmen ought to have known of it. It is the universal rule that a public officer is not personally liable for the negligence of an inferior officer unless he, having the power of selection, has failed to use ordinary care in the selection: Story on Agency (9 ed.), § 321; *Bowden* v. *Derby,* 97 Me. 536 (55 Atl. 417, 94 Am. St. Rep. 516, 63 L. R. A. 223); *Brown* v. *West,* 75 N. H. 463 (76 Atl. 169); *Moynihan* v. *Todd,* 188 Mass. 301 (74 N. E. 367, 108 Am. St. Rep. 473); *Bailey* v. *Mayor,* 3 Hill (N. Y.), 531 (38 Am. Dec. 669); *Walsh* v. *Trustees, etc.,* 96 N. Y. 427; *Bowden* v. *Derby,* 99 Me. 208 (58 Atl. 993).

7–10. It is conceived that Section 281 of the charter of the City of Portland, which attempts to exempt the city from liability for injuries arising from defective streets and to place that liability upon the officer by reason of whose negligence the injury occurred does not create any new or additional obligation as against such officer, as a city official who personally neglects to perform a specific duty was always liable irrespective of any statute prescribing such liability: *Pullen* v. *Eugene,* 77 Or. 320 (146 Pac. 822, 147 Pac. 768, 1191, 151 Pac. 474). It is contended

by plaintiff's counsel with much plausibility that
this line of reasoning leaves plaintiff practically with-
out a remedy, and were we to adopt the theory of de-
fendant's counsel such would be the result, but we
cannot adopt that theory which in effect is that the
city is not liable because of the exemption in the char-
ter; that the commissioners are not liable because
they have provided funds and used diligence in pro-
viding for inspection and had no notice of the defect;
that the city engineer is not liable because he had un-
der him inspectors charged with the duties of ex-
amination and inspection under orders to report any
defect in the walk, and that these inspectors failed to
report.   This would leave the responsibility for the
injury to rest finally upon the shoulders of some prob-
ably irresponsible watchman or inspector and would
be practically a denial of a remedy.   This under the
peculiar provisions of the charter presents a view of
the case not considered in any previous case brought
before this court.   Irrespective of the exemption
clause in the charter the City of Portland would have
been liable for the failure of Hailey, the street in-
spector, to report the defect upon the principle of *re-
spondeat superior*.   The city is out of the case as it
stands here, neither party having appealed as to it,
but it may well be doubted whether it is competent
for the charter-making power to take away from
plaintiff a complete remedy against the city, which
is always solvent and responsible, and whittle down
to the point where plaintiff will have a partial and
doubtful remedy against the city officers or against
a subordinate officer whose position is, perhaps, a
little lower than a deputy inspector and a little higher
than that of the dog-catcher.   To the writer it seems
that such a conclusion is contrary to justice and in

·direct opposition to the doctrine laid down in *Batdorff* v. *Oregon City,* 53 Or. 402 (100 Pac. 937, 18 Ann. Cas. 287).

This case was begun upon the theory that both the city and the mayor and commissioners who constitute the council were liable, the city for the failure of its officers and employees to use reasonable diligence to ascertain and remedy defects in the walks, and the commissioners and city engineer for like negligence on their part; but in our view while they might have been properly so joined the facts which would have justified a recovery against the city might not justify a recovery against the councilmen or the city engineer. The city under the doctrine of *respondeat superior* would be liable for the negligence of any officer authorized by it to see to the repair of the street or perhaps for a failure to designate such officer. The mayor and commissioners, on the other hand, as heretofore observed, are not liable if they have used reasonable diligence to provide funds for such repair and to see that a system of inspection and report of disrepair of walks is provided for and competent persons designated to make such inspections and repairs, unless the defect is so glaring and notorious and long-continued as of itself to create a presumption of knowledge of its existence, which is not the case here. When the court, as the writer thinks, erroneously held that the city should be granted a nonsuit, it left counsel for the plaintiff in the embarrassing position of being compelled to contend that, to use their own language,

"the city commissioners and engineer, the city commissioners particularly, are the body in whom all this power rests and upon whom all these duties are imposed, and consequently they are liable to the same extent and in the same manner as the city itself would

have been liable without the exempting provision in its charter.''

· Assuming the premise to be correct the reasoning of the counsel would seem to be logical. If the exempting provision is broad enough to make the members of the council and the city engineer liable for the neglect of subordinates in any event and irrespective of any diligence or lack thereof in their selection or supervision, then their counsel's contention is correct and the ruling of the court upon the motion for nonsuit was proper. But we apprehend that the negligence for which an officer of the city is responsible is his own personal negligence. In the very nature of things this must be so. An illustration will show the injustice of any other contention: Suppose, for instance, that the engineer had reported this defect to the council and, in the absence of funds, had requested that funds be voted for the purpose of making repairs, and that Albee and Brewster had voted to provide such funds and Bigelow, Dieck, and Daly had voted against the proposition, thereby defeating it, would it be contended for a moment that Albee and Brewster would be liable in damages for this injury which they had vainly attempted to prevent? Or suppose that two of the councilmen having obtained personal knowledge of the defect had failed to report it to their associates, would the negligence of these two be justly imputable to the other members of the body? The conclusion is irresistible that while before the attempted exemption of the city the negligence of its officers, either the council or subordinate officers, was imputable to it, such liability was not transferred to the shoulders of any city officer not actually or constructively negligent. The authorities cited by appellants amply sustain this view. The duty of making a

personal inspection of the walks of the city or of personally repairing them is not imposed upon the mayor, commissioners, or the city engineer, but it is the duty of the commissioners to provide for such repairs and to make such regulations as are necessary to keep the streets in a safe condition. In other words, their responsibility ends with using reasonable diligence to provide funds, competent inspection, and report as to the condition of the streets and walks, and in the absence of actual personal knowledge or such public notoriety in respect to a defect as would indicate that they ought to have known of it by the exercise of reasonable diligence, they are not liable. There is no such notoriety shown here. Portland contains approximately a quarter of a million of inhabitants. It appears from the testimony that something less than a dozen people had noticed the defect, and that three or four of that number had casually mentioned it to neighbors, but nobody seemed to consider the matter serious enough to report to the authorities. The existence of the defect seems not to have been known to anybody except these few persons living in the immediate neighborhood and was not a matter of general public notoriety or concern. The plaintiff who resided within a block of the crossing testifies that she was entirely ignorant of the defect, and yet it is contended the mayor and commissioners with all the multitudinous duties devolving upon them should be adjudged to have been negligent and to pay the plaintiff $6,350 because they did not know of the existence of this defect and repair it. Under the circumstances here the existence of the defect in the walk for three weeks, or perhaps double that time, is no evidence of notice to the council or of lack of diligence on their part in the discharge of their duties. If one

of the principal bridges in the town should become in such a state of disrepair as to be a public menace or impede the public travel, it naturally would become a source of public concern to many people, and the commissioners would in the ordinary course of affairs hear of it. If they were charged with the duty of making a personal inspection of the walks of the city and failed to find a defect which was open and apparent, there might be some reason for the inference that a defect which had existed for several weeks should have been discovered and repaired, but in the very nature of things they can act only through subordinate officers, and it is not claimed that any policeman or inspector ever made any report, and it is evident that no member of the council ever had any personal knowledge of the defect. There was no evidence to justify a finding that the mayor and commissioners were guilty of negligence.

11. As to the city engineer it may be said that it was his duty to use reasonable diligence to ascertain the condition of the streets and walks of the city, and in case defects were found to exist to promptly inform the council or take such measures as are necessary to have the defects remedied. While these duties are personal to him to a limited extent, it follows from the very nature of the case that in a city the size of Portland the inspection cannot be performed by him personally, and it appears from the evidence that to a great extent such inspection must be made by persons not selected by him or under his control, but serving under civil service rules and appointed by another authority. In estimating, therefore, the diligence exercised by him personally it was proper to show the mileage of streets in the city and the efforts made by him personally to secure a proper and complete in-

spection and repair.   In attempting to show this and
in enumerating the duties imposed upon him Mr. Dater,
the engineer, testified as follows:

"A supervision of all construction work in the
nature of bridges, streets, and sewers, which work
includes an average of a million dollars a year.   The
supervision of certain sewers and street repair work
on funds voted by the council specifically for that
work, and during the year 1915 there was upon street
repair work three crews mainly employed on repair
of macadam streets.   I think at the particular time
of this accident, or just prior to it, two of those crews
were at work in the so-called Northeast district, which
included the place of accident.   One of those crews
had been over this particular district shortly before
the accident, and in connection with their duties of
repairing the streets, and macadamizing the street,
they did repair all cross-walks, gutters, and other
parts of the street, which appeared to need attention.
There are over 1200 miles of street in the city, and to
give personal attention to it would require five and
six years of walking to get over it."

Plaintiff's counsel moved to strike out such testi-
mony as not being responsive to the question nor
within the ruling of the court, and being a conclusion
of the witness, which motion was allowed and the tes-
timony stricken out.   This was material error.   The
witness was entitled, in order to relieve himself of the
charge of lack of due diligence in ascertaining defects
in the street, to show, first, the nature of the task, and,
second, the efforts he made to perform it.   The law
never requires impossibilities, and all it demands of
any official is that he shall honestly and faithfully do
his best under the particular circumstances.   Having
done this he is blameless.   The witness testified along
the same line as follows:

"To show the efforts which were made to obtain
information and keep track of such matters, I would

say that all employees in the department were under written orders to report any defects in street surface, or any public property that they saw, or which is reported to them. I have to depend almost wholly upon these reports and on the reports from the police department. I presume reports from the police department are the most important, because that organization covers the entire city every day presumably. There is a record kept in the office of all complaints made by individuals, often complaints come in over the telephone. All complaints filed by the Police Bureau, those complaints are each given an individual number and they are reported at once to the officer or employee who should attend to them. There is every effort possible made to follow them up promptly. And dangerous cases—"

This was also stricken out. He further stated:

"The orders are that all important cases, all dangerous cases, should receive immediate attention. In the matter of sidewalks, in this particular year, there were posted over twenty-seven miles of sidewalks for reconstruction."

For the reason given above this testimony should have been allowed to go to the jury.

The judgment of the Circuit Court is reversed and a new trial awarded.        REVERSED AND REMANDED.

MR. JUSTICE McCAMANT absent.

MR. JUSTICE MOORE delivered the following dissenting opinion:

I cannot concur in the conclusion reached in this case by the Chief Justice. A contrary rule was established in the case of *O'Harra* v. *City of Portland,* 3 Or. 525, where it was held that a section of the charter of the City of Portland exempting that municipality from liability for any personal injury arising from a defec-

tive street was operative.  That determination has prevailed in this state  nearly forty-eight years and should, in my opinion, be controlling.  In *Mattson* v. *Astoria,* 39 Or. 577, 579 (65 Pac. 1066, 87 Am. St. Rep. 687), Mr. Chief Justice BEAN, citing the decision rendered in the preceding case, says:

"That it is within the power of a legislature to exempt a city from liability to persons receiving injuries on account of streets being defective or out of repair, is unquestioned. * * But in such case the injured party is not wholly without remedy.  He may proceed personally against the officers to whom the charter delegates the duty of keeping the streets in repair, and from whose negligence the injury resulted."

The legal principle last announced is subject to the qualification that before municipal officers who are charged with the performance of the duty can be rendered liable for damages resulting from a personal injury caused by a defective street they must have had at their command the means with which to renew the highway: *Batdorff* v. *Oregon City,* 53 Or. 402 (100 Pac. 937, 18 Ann. Cas. 287).  The defendants, who are officers of the City of Portland in this instance, had at their disposal ample funds with which to make the needed repairs; and as they were elected with notice of these decisions they ought, in justice to be bound by them.

Rehearing denied September 11, 1917.

PETITION FOR REHEARING.

(166 Pac. 537.)

On petition for rehearing.   Rehearing denied.

*Mr. Harold V. Newlin* and *Messrs. Cleeton & Mc-Menamin,* for the petition.

*Mr. Walter P. LaRoche,* City Attorney, and *Mr. Henry A. Davie,* Deputy City Attorney, *contra.*

In Banc.   MR. JUSTICE HARRIS delivered the opinion of the court.

The plaintiff has filed two petitions for a rehearing, one for a rehearing of the motion to dismiss the appeal, and the other for a rehearing "upon the merits." The original presentation of the motion to dismiss the appeal was supported by three carefully prepared briefs in which counsel for plaintiff exhaustively argued their contention.   While the petition for a rehearing contains no argument not previously advanced by the plaintiff we have nevertheless re-examined the motion to dismiss the appeal with the result that the re-examination carries us along the same path of reasoning which Mr. Chief Justice McBRIDE followed in the original opinion and brings us to the same conclusion which he there expressed: *Colby* v. *Portland, ante,* p. 359 (166 Pac. 537).

The petition for a rehearing "upon the merits" does not require an extended discussion and it is sufficient to say that after considering the suggestions of counsel our conclusion is that a rehearing should be denied; and it is so ordered.          REHEARING DENIED.

MR. JUSTICE McCAMANT took no part in the consideration of this case.